## Louisville, Henderson & St. Louis Railway Company v. Lyons, et al.

(Decided October 21, 1913).

### Appeal from Breckinridge Circuit Court.

1. Children—Employment of Under Sixteen—Liability of Employer for Employing in Dangerous Occupations.—Subsection 11 of Section 331-a of the Kentucky Statutes prohibits the employment of children under sixteen years of age in certain named occupatons, and also in any occupation that is dangerous or injurious to health or morals or life or limb, and imposes a penalty on the employer for employing children in the prohibited employments.

2. Children—Employment of Under Sixteen—Dangerous Employments—Construction of Statute—How Employer May Escape Liability.—Subsection 11 of Section 331-a, after naming a number of prohibited employments, provides that it shall be unlawful to employ a child under sixteen years of age in any employment that is dangerous or injurious to health or morals or life or limb, and leaves to the decision of the county physician or city health officer, as the case may be, the decision of the question whether the employment is dangerous or injurious or not. Therefore, if an employer desires to save himself from the penalties of the statute, he must, before employing a child, obtain the certificate, or have one furnished him by the parent or guardian.

3. Children — Employment in Dangerous Occupations — Ascertainment of Fact by a Jury.—Where a child is employed in an occupation concerning the danger of which there may be reasonable doubt, and the employer has not obtained the certificate of the officer named in the statute, it is proper to leave the question to a jury under proper instructions.

4. Constitutional Law—Delegation of Power by Legislature to Subordinate Agents.—The Legislature may delegate to subordinate agents the right to determine the administrative provisions of a law. But these agents do not exercise any of the power delegated to the Legislature. They merely find the existence of certain facts and to these findings of fact the law enacted by the Legislature is applied and enforced.

5. Negligence—Contributory Negligence—Defense of Not Available in Action by a Child Injured While Engaged in a Prohibited Employment.—When a child is employed in a prohibited occupation

and he is injured while so employed, the employer cannot defeat a recovery upon the ground that the child assumed the risk or was guilty of contributory neglect or that the injury was caused by the act of a fellow servant.

6. Master and Servant—Liability of Master for Employing Children in Prohibited Employments.—Where a child is employed in a prohibited employment, the master assumes all the risk of any injury that may happen to him while engaged in such employment, and the child none, and the master cannot set up the defense of assumed risk or contributory negligence.

J. R. SKILLMAN, FRANK C. MALIN and R. A. MILLER for appellant.

CLAUDE MERCER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, McKinley Lyons, a boy under fifteen years of age, employed as a section hand by the appellant company, was thrown from a hand car on which he was riding with the section crew. The speed of the car while it was going down a heavy grade was suddenly arrested by an iron bar that fell from the car to the track, and Lyons, who was on the front end of the car working one of the motor levers, was thrown to the track and the car ran over him inflicting serious and permanent injuries. A settlement, so inadequate as to be fraudulent, was made soon after the accident between representatives of the company and the father of Lyons, but before it was consummated by the payment of the sum agreed upon, this action was brought by the guardian of Lyons to recover damages for his injuries, and the settlement was abandoned by both parties.

In the petition a recovery was sought alone upon the ground that the injuries complained of were caused by the negligence of the section foreman in charge of the handcar, in operating and loading the car. The answer, after traversing the averments of the petition, affirmatively pleaded that the contributory negligence of Lyons was the proximate cause of his injury. This pleading being controverted, the issues, excepting an amended petition to be later noticed, were completed, and the case proceeded to a trial before a jury, with the result that a verdict was returned in favor of Lyons for $3,350, and judgment entered accordingly.

On the trial the plaintiff introduced in his behalf the section foreman in charge of the hand car when the acci-

dent occurred, and several of the section crew, as well as other witnesses, and, upon the conclusion of the evidence, the company moved the court to direct a verdict in its favor, which motion was overruled. When this motion was overruled, the plaintiff tendered, and there was filed over the objection of the defendant, an amended petition averring that when he received the injuries complained of "he was under sixteen years of age and that the employment in which he was engaged at the time of the accident complained of was one dangerous to life and limb and so known to the defendant, its agents, servants and employees in charge of the hand car from which plaintiff was thrown, to be dangerous to life and limb,"

When this amended petition was filed, the defendant moved the court to discharge the jury and continue the case, upon the ground that it was surprised by the introduction into the case of the new issue presented by the amended petition. In support of this motion it filed an affidavit stating that "while the operation of a hand car is attended with some danger, it is not a dangerous or hazardous occupation in the sense of the occupations and employments specifically prohibited in the statute as dangerous to life and limb, and if given opportunity the defendant can prepare to meet said issue and can and will subpoena witnesses and prove the operation of the hand car under ordinary circumstances is not dangerous to life or limb within the meaning of the statute or to the extent that it can be classed with the employments therein forbidden."

The trial court overruled the motion to discharge the jury and continue the case, and permitted the averments of the amended petition to be controverted of record. The defendant then declined to introduce any evidence in its behalf, and the court, after refusing a number of offered instructions, gave to the jury only the two following instructions:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff at the time he was injured was under sixteen years of age, and that the occupation in which he was engaged as servant of the defendant company was dangerous to life or limb, then and in that event the jury will find for the plaintiff. And unless the jury believe as set out in this instruction they will find for the defendant.

"2. If the jury find for the plaintiff they will award him by measure of damages such a sum of money as will fairly and reasonably compensate him for any mental and physical suffering, if any or either, and for any permanent impairment or reduction of his power to earn money which the jury believe from the evidence was caused by his falling or being thrown from the hand car mentioned by the witnesses on the occasion in controversy, not exceeding $20,000, the amount claimed."

It will be seen from the instructions given that the trial court put the case upon the averments of the amended petition, and was of the opinion that the employment plaintiff was engaged in when injured came within the prohibition of the statute, and, therefore, the defense of contributory negligence could not be relied on. The effect of this ruling was to take from the jury exery issue except the ones relating to whether or not the employment was dangerous to life and limb and the assessment of damages. The statute on which the amended petition was based is subsection 11, of section 331a, reading as follows:

"No child under the age of sixteen years shall be employed at sewing belts, or to assist in sewing belts, in any capacity whatever, nor shall any child adjust any belt to any machinery; they shall not oil or assist in oiling, wiping or cleaning machinery; they shall not operate, or assist in operating, circular or band saws, wood shapers, wood joiners, planers, sand-paper or wood polishing machinery, emery or polishing wheels used for polishing sheet metal, wood turning or boring machinery, stamping machines in sheet metal and tin-ware manufacturing, stamping machines in washer and nut factories, operating corrugating rolls, such as are used in roofing factories, nor shall they be employed in operating any steam boiler, steam machinery, or other steam generating apparatus, or as pin boys in any bowling alley; they shall not operate or assist in operating dough brakes, or cracker machinery of any description, wire or iron straightening machinery, nor shall they operate or assist in operating rolling mill machinery, punches or shears, washing, or grinding or mixing mills, or calendar rolls in rubber manufacturing, nor shall they operate or assist in operating laundry machinery, nor shall such children be employed in any capacity in preparing any composition in which dangerous or poisonous acids are used, and they shall not be employed

in any capacity in the manufacture of paints, colors or white lead, nor shall they be employed in any capacity whatever in operating or assisting to operate any passenger or freight elevator, nor shall they be employed in any capacity whatever in the manufacture of goods for immoral purposes, nor in any theatre, concert hall, or place of amusement wherein intoxicating liquors are sold, nor shall females under sixteen years of age be employed in any capacity where such employment compels them to remain standing constantly. Nor shall any child under sixteen years of age be employed in any occupation dangerous or injurious to health or morals, or to lives or limbs, and as to these matters, the decision of the county physician or city health officer, as the case may be, shall be final.''

It will be observed that this section specifies by name a number of occupations in which children under the age of sixteen shall not be employed, but among these named occupations we do not find railroads or hand cars mentioned. But at the close of the section the Legislature inserted a general clause intended to and that does embrace ''any occupation dangerous or injurious to health or morals, or to lives or limbs.'' The effect of this general clause being to prohibit the employment of children under sixteen years of age not only in the occupation specifically mentioned but also in any occupation that is dangerous to health or morals or to lives or limbs. It will further be noticed that as to the employments not specifically mentioned, the statute, in the concluding words, provides that as to ''occupations dangerous or injurious to health or morals or to lives or limbs, the decision of the county physician or the city health officer, as the case may be, shall be final.''

It was, of course, well known to the Legislature that there might be reasonable difference of opinion as to whether certain employments other than those specifically named in the statute were dangerous, and the obvious purpose of thus confiding to an officer the right to decide whether an employment was dangerous or not was to furnish to employers a means by which they might save themselves from the penalties of the statute in the event they employed a child in an occupation concerning the dangers of which there might be room for reasonable difference of opinion.

We understand this reference of the question to the decision of the official named to mean that when an em-

ployer of labor wishes to engage the services of a child under sixteen years of age, in an occupation not specifically prohibited, but that might be regarded as dangerous or injurious to health or morals or to lives or limbs, he may apply to the county physician or city health officer, as the case may be, and obtain from him a decision; and if this officer, after having sumbitted to him a full and fair statement of the nature of the employment, decides that it is not dangerous or injurious to health or morals or to lives or limbs, the employer may engage the services of the child without violating the statute.

The employer will likewise be protected by a decision of the officer given to the parent or guardian of the child and furnished by the parent or guardian to him before the services of the child are engaged. But if the decision of the officer is that the employment is dangerous or injurious to health or morals or to lives or limbs, or if the child is employed in an occupation coming within the scope of the statute, without first obtaining the decision of the officer, the employer commits a violation of the statute in employing him.

In thus construing the statute we have assumed its validity, not, however, without giving consideration to the argument advanced by counsel for the railroad company, that the last clause of the section is invalid. The argument of counsel, using his own words, is that "the Legislature cannot leave to the discretion of executive or ministerial officers the right to determine what occupations shall be included within a legislative act. For a stronger reason, it cannot remit that important legislative function to a trial jury. To do this, would be to give to the officer or the jury arbitrary power, in violation of the bill of rights. Moreover, it would result in an unequal and varied classification of employments, as before argued, and no fixed character could be assigned to any particular business or occupation. An employer would have no assurance that his act in engaging the services of an infant in a given occupation today, although approved by one health officer, would be satisfactory to the next one, and a particular occupation, like the chameleon, would change its spots according to the whims and fancies of successive juries."

We do not agree to the soundness of this argument and think the clause assailed may well be sustained upon the ground that the Legislature merely confided to a

subordinate public official the authority to act in respect to an administrative feature of the law. The decision of the officer as to whether an employment comes within the prohibition of the statute, to afford protection, must be obtained before the employment is entered into. Therefore, the rights of the employer are not interferred with by the action of the officer, as no employer has a right to employ a child under sixteen years of age without first obtaining the consent of the child's parents or guardian, and the statute only imposes the additional requirement that he shall also have the decision of the officer named. So that the requirement of the statute, if its conditions are observed, does not subject the employer to any unknown or speculative danger or impose upon him any unreasonable or arbitrary burden. It tells him in simple words what course to pursue if he wishes to avoid liability under the statute.

Nor is the statute, or rather the clause in question, open to the objection that it is an unauthorized delegation of legislative authority. There are many laws enacted by the legislative department of the State containing administrative features that it is necessary to confide to agents selected by the Legislature. If the Legislature could not delegate to subordinate officers the right to determine the administrative provisions of a law, the result would be that many useful laws would be entirely inoperative because the Legislature could not reasonably or fairly anticipate the various conditions to which it might be necessary to apply them. For example, we have in this State laws intended to protect the health of the people, and the administration of these laws is committed to boards of health who are invested with a large measure of discretion. It is left to them to say what diseases may be quarantined and for how long, and to say what means and methods shall be adopted to prevent the spread of disease.

We have a railroad commission that exercises much authority under the act creating it. We have statutes regulating dentistry, medicine, pharmacy, barbering, embalming and other things that concern the health of the people. We have also statutes regulating banking, insurance and horse racing. These various statutes are administered by boards to whom the Legislature has confided certain powers relating to the enforcement of these laws. But these agents do not exercise any of the powers

delegated to the Legislature. They do not make any laws. They merely find the existence of certain facts, and to these findings of fact the law enacted by the Legislature is applied and enforced.

When the Legislature confided to the physician or officer mentioned in this act the right to say whether an employment was dangerous or not, it merely conferred upon this officer the authority to find the existence of a fact and upon his finding the legislative act becomes operative. In State Racing Commission v. Latonia Agricultural Association, 136 Ky., 173; Welch v. Swasey, 193 Mass., 364, 23 L. R. A. (n. s.), 1160; Pittsburg Railroad Co. v. Hartford City, 170 Ind., 674, 20 L. R. A. (n. s.), 461; Trustees of Saratoga Springs v. Saratoga Gas Co., 191 N. Y., 123, 18 L. R. A. (n. s.), 713; Borgnis v. Falk Company, 147 Wis., 327, 37 L. R. A. (n. s.), 489; State v. Loden, 117 Md., 373, 40 L. R. A. (n. s.), 193, and in many other cases that might be referred to, the validity of legislative acts, delegating to agents the authority to ascertain the facts necessary to put into operation the legislative will, has been upheld. Indeed, there is little if any conflict in the authorities upon this question.

It is next contended that the trial court erred in submitting the decision of this question to the jury, as was done in instruction No. 1. As we have pointed out, the railroad company, if it wished to avoid subjecting itself to the penalty imposed by the statute, should have obtained a decision from the county physician or city health officer, if one could have been obtained, that the contemplated employment was not dangerous to life or limb. Having failed to do this, it voluntarily chose to leave this question of fact for ascertainment by a jury. We do not know any better method by which the character of the employment could be ascertained under the circumstances.

The jury, in returning a verdict for the boy, of course found that the employment was dangerous to life and limb. Of the correctness of this finding of fact we think there can be no question. Every person who knows anything at all about a railroad or hand cars must know that a boy who is engaged as a section hand and whose duties require him to ride on and assist in running a hand car, is engaged in a dangerous employemnt.

Is the defense of contributory negligence available in an action to recover damages for personal injuries sustained by a child while engaged in an employment

prohibited by the statute, or while engaged in a dangerous employment without having the decision of the physician or officer that it was not dangerous? We think not, although this precise question has not been heretofore determined by this court. In Smith v. National Coal & Iron Co., 135 Ky., 671, an action was brought to recover damages for the death of a child employed in a prohibited employment, and we held that as the right to recover damages for death was created by a statute permitting the plea of contributory negligence, the right to rely on this defense could not be separated from the right to maintain the action, and, therefore, it could be interposed. In Casperson v. Michaels, 142 Ky., 314, a case arising under this statute was before us, but the question of contributory negligence appears not to have been considered.

This question, however, has often come up in other jurisdictions, and there is conflict in the decisions, some courts holding that the plea of contributory negligence is available, others that it is not. In the case of Berdos v. Tremont & Suffolk Mills, 209 Mass., 489, 23 A. & E. Ann. Cases, 797, the Massachusetts court, in a well considered opinion, reached the conclusion that the defense of contributory negligence was available. A like conclusion was reached by the West Virginia court in Norman v. Virginia, Pocahontas Coal Co., 68 W. Va., 405, 31 L. R. A. (n. s.), 504, and the Oregon court in Mundhenke v. Oregon City Mfg. Co., 47 Oregon, 127, 1 L. R. A. (n. s.), 278, and also the Michigan court in Beghold v. Auto Body Co., 149 Mich., 14, 14 L. R. A. (n. s.), 609.

On the other hand, the Illinois court in Strafford v. Republican Iron Co., 238 Ill., 371, 20 L. R. A. (n. s.), 876, the New York court in Marina v. Lehmaier, 173 N. Y., 530, 61 L. R. A., 811, and the Pennsylvania court in Lenahan v. Pittston Coal Co., 218 Pa. State, 311, 12 L. R. A. (n. s.), 461, found that this defense was not available.

Coming now to state our own views, we are inclined to give the statute a construction that will carry out what we conceive to be the legislative intent in its enactment. The manifest purpose of the statute, as it relates to the matter before us, was to protect the lives and limbs of children by prohibiting their employment in certain occupations that the Legislature deemed dangerous or injurious to life or limb, and to save children from accidents that their own heedlessness or carelessness might bring about. This being the very purpose of

the statute, if the defense of assumed risk or contributory negligence could be relied on in an action brought by the child to recover damages for injuries sustained, the object of the statute would, in a large measure, be defeated.

There are many employers who engage the services of children because their labor can be obtained at less cost than the labor of adults. There are also parents who do not seem to care how dangerous the employment in which their children are engaged, and so, between the unconcern of the employer and the indifference of the parent, it was a common thing to find children of tender years working at occupations in which they were liable at any moment to be crippled or killed. The child, thoughtless, forgetful and careless, as the majority of them are, was thus subjected to continual danger.

Confronted by this distressing condition existing in many places, the Legislature endeavored to remedy it by the enactment of this statute prohibiting the employment of children in certain occupations. The Legislature knew from observation and experience that one way to accomplish the desired result would be to impose a direct penalty on the employer, as the law does.

But the imposition of a small penalty on the employer was not all the Legislature intended to do in its efforts to save children from being crippled or killed in dangerous occupations, or the only burden it was intended the employer should assume if he violated the statute. To so construe it would be to lose sight of the rights of the child who should receive the fullest measure of compensation if injured while working in a forbidden employment. If the child is to assume the risk of danger that follows his thoughtlessness  or want of care, or is to be charged with negligence because his immature judgment and youthful habits caused the accident, then in many cases on the child and not the employer would be put the consequences of the unlawful act of the employer. The child, in accepting employment, does not knowingly violate any law  or purposely do  any wrong; but  the employer does, and, between the two, the employer, for the benefit of the child, should bear all the burden and the child none. In other words, the employer should be required, so far as compensation can do it, to put the child in the same condition as he would have been except for the wrongful employment which·caused his injury.

We, therefore, hold that neither the doctrine relating to assumed risk or fellow servants or contributory negligence has any place in the application of this statute. The employer takes all the risk, the child none. It is true this construction makes the employer an insurer of the safety of the child, and so he should be. The lives and limbs of children are too valuable to be sacrificed in dangerous employments, and if an employer, in violation of the statute, engages the services of a child in such an employment, he must see to it that no harm comes to him, or if it does, he must compensate him, in so far as money can do, for the injury inflicted.

The suggestion is made that the rule that obtains in respect to other employments in which the defense of contributory negligence is allowed, although the employe is injured by the employer's violation of a statute, should be applied in the construction of this statute. For example, in the construction of the statute relating to the liability of mine owners, we have held in many cases that the failure of the mine owner to furnish statutory safety appliances subjected him to liability, but we have also held that an action by a miner to recover damages for the failure of the mine owner to perform these statutory duties may be defeated by his contributory negligence or by evidence that he assumed the risk. These statutes, however, while they have increased the liability of the mine owner, do not decrease the obligation the miner is under to exercise care for his own safety. They do not prohibit the employment of miners in places that the mine owner has not protected with the safety devices required. They only put upon the mine owner a higher duty than the common law would impose.

But the child labor statute prohibits the employment of children. It is unlawful to employ them, and the fact that it is unlawful to employ them is the reason why the employer who violates the statute should not be permitted to shield himself from his own wrong by setting up a defense that the child and not himself caused the accident. Except for his unlawful act in employing the child he could not have been injured, and the employer should not be permitted to take advantage of his own unlawful act by putting the consequences on an innocent party.

Another question raised is that the court erred in refusing to grant a continuance. The record does not disclose any reason why a continuance should have been granted. The railroad company could not at any time

produce any witnesses that would help its case for the simple reason that it had no defense that could be made, except as to the extent of the injuries and the amount of recovery, and no question is raised by counsel as to either.

The judgment is affirmed.