GERDON W. NOBLE, Appellant, v. EMORY H. ENGLISH, Appellee.

INSURANCE: Refusal to Grant License. The legislature may validly delegate to the commissioner of insurance the power to refuse, for good cause, licenses to act as agents of insurance companies, and such power is properly exercised by the commissioner in refusing a license on the sole ground that the applicant is a *nonresident* of the state; and especially is this true when the company for which applicant desires to act is a foreign company. (Sec. 1821-k, Code Supp., 1913.)

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

MAY 20, 1918.

ACTION in mandamus. Opinion states the case. Judgment dismissing plaintiff's petition. Plaintiff appeals.— *Affirmed.*

.   *McClelland & Powers,* for appellant.

*H. M. Havner,* Attorney General, and *J. W. Kindig* and *C. A. Robbins,* Assistant Attorney Generals, for appellee.

GAYNOR, J.—This is an appeal from the ruling of the district court denying to the appellant a writ of mandamus compelling the commissioner of insurance to issue to this appellant a license to transact the business of an insurance agent within the state of Iowa. The company which the plaintiff desires to represent is a foreign company. The plaintiff is and was a resident of the city of Omaha, in the state of Nebraska. He made application for permission to represent the New England Mutual Life Insurance Company, of Boston, Massachusetts, an insurance company authorized to transact business in the state of Iowa in accordance with the laws thereof. The license was refused, on

the sole ground that the plaintiff was a nonresident of the state of Iowa. The plaintiff appeals.

A careful analysis of the cases bearing upon the question here under consideration suggests that much of the apparent conflict in the authorities may be accounted for by a consideration of the character of the right conferred and called into question in the several cases. It is the holding that any law which restricts the lawful dominion of an owner over his property or the conduct of his business should be general and uniform, and affect all persons or classes of persons, under like situations, the same. Before a common right or lawful conduct or the lawful use of property can be restricted, reasonable rules and conditions must be prescribed, to be observed in such conduct or business, and such as may be complied with by all citizens desiring to exercise the rights or privileges. The law itself may prescribe these rules and conditions to be observed, upon compliance with which permits or licenses to conduct the business may be granted by ministerial officers named in the law. Without this license or permit, the restriction becomes operative upon the citizen's failing to comply. When the conditions are prescribed, and their observance exacted by the law, it is the uniform holding of the courts that the lawmaking power may delegate to ministerial officers the right to determine whether these conditions have been complied with, as a condition precedent to issuing the license; and it seems to be the general holding that the test as to whether or not a permit or license shall be granted should be reasonable, and one which does not prohibit, by its unreasonable exaction, the exercise of the right, the conduct of the business, or the use of property.

There are certain businesses which may be regulated and controlled by the state through its police power, and the legislature, acting for the state, may prescribe the conditions under which the business may be carried on or the

rights exercised. It is manifest that the legislature, in seeking to control the management of businesses subject to its control and management, and the manner of exercising rights conferred, cannot always anticipate and foresee all the conditions that may arise, affecting the conduct of the business or the exercise of the right, which may affect the public interest. It may, therefore, delegate to the ministerial officers certain powers, somewhat judicial in their nature, the exercise of which is essential to the proper and effectual carrying out of the purpose and object of the law itself, in the control and management or conduct of the business subject to its regulation and sought to be regulated. Of course, it cannot delegate to these ministerial officers arbitrary and unlimited power—power to deny that which is legitimate and proper, and recognized as such by the state. The exercise of rights and privileges by individuals, even in the conduct of lawful business and the exercise of lawful right, may be regulated and controlled in the interests of the public. This is the theory of the license law; this is the theory upon which legislative regulation is based.

It follows that the right of every person to pursue any business or calling is subject to the right of the state, under its police power, to impose such restrictions and regulations as are apparently necessary for the protection of the public; and it follows that, where there is, in the state, the power to regulate a business or an occupation, it may confer discretionary powers upon ministerial officers, somewhat in their nature judicial, and the fact that the exercise of the power granted is in its nature judicial, does not make the granting of such power an impingement upon the prerogatives of the constitutional judicial authorities.

In *People v. Hasbrouck*, 11 Utah 291 (39 Pac. 918), the court used this language:

"The objection that the statute attempts to confer judicial power upon the board is not well founded. Many

executive officers, even those who are spoken of as purely
ministerial officers, act judicially in the determination of
facts in the performance of their official duties; and in so
doing, they do not exercise 'judicial power,' as the phrase
is commonly used, and as it is used in the organic act, in
conferring power upon specified courts."

The state has the right to regulate the business of for-
eign insurance companies, and this state has exercised this
right, and has established a department of insurance and
a commissioner of insurance, who has the control and man-
agement of such department.

Section 1683-r of the Code Supplement, 1913, provides:

"That there is hereby created and established a depart-
ment to be known as the insurance department of Iowa.
The chief officer of said department shall be styled 'com-
missioner of insurance.' "

Section 1683-r3 provides that:

"The commissioner of insurance shall be the head of
the insurance department of Iowa, and shall have gen-
eral control, supervision and direction of all insurance busi-
ness transacted in the state of Iowa, and shall be charged
with the execution of the laws of this state relating to in-
surance; and all powers now vested in and all duties im-
posed upon the auditor of this state relating in any way to
insurance matters, shall, from and after the taking effect
of this act, be vested in and made incumbent upon the com-
missioner of insurance herein provided for."

Section 1821-k of the same Supplement provides 'that:

"No person shall directly or indirectly, act within this
state as agent or otherwise,   *   *   *   or transacting any
kind of insurance business for any company or association,
other than county mutuals or fraternal beneficiary asso-
ciations, until he has procured from the auditor of state a
license authorizing him to act for such company or associa-
tion as agent which license shall terminate at the end of

the insurance year for which such company or association is authorized to transact business. The auditor of state may, for good cause, decline to issue such license or may, for like cause, revoke the same. The fee charged for such agent's license shall be, for domestic companies, fifty cents, and for companies located outside the state, two dollars."

It is noted that insurance corporations, such as this plaintiff represents, can act only through agents. Permission is granted the company to do business in the state of Iowa. This business must be transacted through the instrumentality of agents. The legislature, when granting permission to do business within the state, recognized that it can be transacted only through duly appointed agents, and said:

"No person shall, directly or indirectly, represent you within this state, as agent or otherwise, or transact any insurance business for you, until you procure from the auditor of state a license authorizing him to act for you. We reserve, however, for the auditor and in the auditor (now the insurance commissioner), the right to decline to issue license,—not arbitrarily, not capriciously, but for good cause."

The state recognizes that there may be good cause why certain people shall not represent this company in the state of Iowa in the transaction of its business. When this company accepted a franchise or right from the state to transact business in the state, a right which it could not exercise except by permission of the state, it accepted the conditions under which it was authorized to transact business, to wit, through agents licensed by the auditor of state. It accepted the condition that the auditor of state might, for good cause, refuse permission to certain agents to act for this company in this state. The right of the company to do business in the state comes from the state, and is subject to the limitations placed on the exercise of the right

granted. The agent's rights cannot rise higher than the rights of his principal.

It is apparent that the legislature might have said in the statute that no agent shall represent this company who is not a resident of the state from which the authority to do business comes. In *Western Union Telegraph Co. v. Kansas*, 216 U. S. 1 (54 L. Ed. 355), it was held that a state may exclude foreign corporations, and, upon admission, may impose such terms and conditions on their doing business as it deems to be consistent with public policy.

It is not questioned in this case that the power lay in the state to exclude this insurance company from doing business in this state. It is not questioned that the power lay in the state to regulate the manner in which the business should be transacted in this state. It is apparent that it could only be transacted through agents. It is true that the law itself does not prescribe what qualifications these agents shall possess. It has impliedly said:

"We consent that you may do business in this state under the conditions which we prescribe. You may do business through agents, but these agents must have a license from our commissioner, who is empowered by us to refuse anyone applying for permission to act as agent, when good cause exists why such application should be denied."

This does not give to the commissioner arbitrary power to capriciously refuse a license, but does vest in him the right to determine whether or not the person applying is one whose appointment will conserve the good of the state and of the public; and when good cause appears for denying a license to an applicant, and good cause exists, he is within the exercise of the delegated power in denying a license, and cannot be forced by mandamus to grant it until it is made to appear affirmatively that good cause for such refusal does not exist. We think it cannot be denied that,

when the power lies in the state to refuse to allow a foreign corporation to do business in the state, a grant of right may be upon such conditions and regulations as the state may impose. This state might have lawfully refused this company the right to do business at all in this state, or, granting the right, might impose conditions on its exercise. As said before, all its business is done through agents. The jurisdiction of this state over the company depends upon service of notice upon agents. The legislature might have said, "We will not permit you to do business in this state except through resident agents," and such condition would be a lawfully imposed condition. The state said, however: "You may do business through agents, but your agents must secure a license from our commissioner, who may refuse, for good cause." If this condition were a lawful condition, and one which the state might have imposed, it follows that it is a good condition, and one which the legislature has authorized its commissioner to impose. It is certainly a condition imposed in the interest of the public, and in the interest of a fair administration of the law of this state governing insurance companies.

In *Cook v. Howland*, 74 Vt. 393 (93 Am. St. 912, 59 L. R. A. 338), it is said:

"A corporation has legal existence only in the state of its creation. It may be permitted to do business in another sovereignty, or it may be entirely excluded therefrom. The question whether such permission shall be given rests wholly with the state which the corporation seeks to enter for that purpose; and, if permission is granted, it may be under such conditions and regulations as the state shall impose, providing matters of a Federal nature are not affected thereby, without invading the rights and privileges guaranteed by the provisions of the Constitution, * * * for it is settled beyond question that a corporation is not a citizen, within the meaning thereof

[citing authorities]. But it is urged by the petitioner that the United States Life Insurance Company has received its license to do business in this jurisdiction; that the petitioner is seeking relief in his personal capacity alone [this action was in mandamus]; and that a refusal to grant him a license as requested, because he is not a resident of this state, when the law provides for issuing such license to a resident, is an abridgment of his rights and privileges as a citizen of one of the states, within the inhibition of the Constitution. As has already been seen, the condition whereby the corporation is licensed to conduct business by resident agents only, is valid and binding on the company in its corporate entity. It cannot be less so as to the agents of the company [citing authority]. To license an agent who is a resident of another state to conduct the business of a foreign insurance corporation in this state would be to give him a right to manage the business of his agency in a way prohibited to his principal,—a position incompatible with the governing principles of the law of agency."

In *Hooper v. California*, 155 U. S. 648 (39 L. Ed. 297), the Supreme Court of the United States, speaking through Justice White, said:

"She [the state] has the power, if she allows any such companies to enter her confines, to determine the conditions on which the entry shall be made. And, as a necessary consequence of her possession of these powers, she has the right to enforce any conditions imposed by her laws, as preliminary to the transaction of business within her confines by a foreign corporation, whether the business is to be carried on through officers or through ordinary agents of the company. * * * The power to exclude embraces the power to regulate, to enact and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to

render the enforcement of the conceded power efficacious to the fullest extent."

See also *Adams v. Thomas*, 246 Fed. 175; also, *Reetz v. Michigan*, 188 U. S. 505. In *State v. Briggs*, 45 Ore. 366 (2 Am. & Eng. Ann. Cases 424), a similar question to the one here was involved. It appears that the defendant had applied for the right to exercise the barber's trade. The statute of that state declared that it should be unlawful for any person not registered to practice the business of a barber or conduct a barber shop or barber school without the sanction of the board. The law provided for the appointment of a board of examiners, and defined its powers and duties, among which was the power to make such by-laws as it might deem necessary, not inconsistent with the Constitution of the state, and to prescribe the qualifications of a barber in the state. In that opinion, it was said:

"While the law defines what shall constitute a barber, it does not prescribe the standard or degree of knowledge, learning, experience or qualification which shall be required before applicant shall be licensed or authorized to follow the trade or calling, but leaves that matter to be determined by the board of examiners. This, it is argued, renders the act void, because it is a delegation of legislative authority, and vests in the board arbitrary and unregulated powers. The position of the defendant is that, while the legislature may lawfully regulate the trade or calling of a barber, and require all persons following it to register, or obtain certificates from the board of examiners, it must provide in the act the standard or qualification required, leaving to the board the mere duty of ascertaining whether the applicant possesses such qualification. Legislative power cannot be delegated, and the legislature cannot confer upon any person, officer, or tribunal the right to determine what the law shall be. This is a function which the legislature alone is authorized, under the Constitution, to exercise.

The constitutional inhibition, however, cannot be extended so as to prevent the legislature from conferring authority upon an administrative board to adopt suitable rules, by-laws, regulations, and requirements to aid in the successful carrying out and execution of the law it has passed. The doctrine on this subject is admirably stated by Mr. Justice Agnew, in *Locke's Appeal*, 72 Pa. 491 (13 Am. Rep. 716), as follows: 'Then the true distinction, I conceive, is this: The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' It is well settled by a long line of authorities  *  *  *  that the power given to an administrative board like the one now under consideration to prescribe rules and regulations reasonably adapted to carry out the purposes and object for which the board is created does not constitute an improper delegation of legislative authority.  *  *  *  It is sometimes said in opinions and in law books that, where a statute undertakes to regulate the licensing of callings, trades, or professions, the extent of the qualifications required of the licensee must be determined by the judgment of the legislature; but this does not mean that the legislature must necessarily provide in the act itself the exact qualifications required. It may delegate that power to a board or commission created and authorized by it, which, in the exercise of the authority vested in it, acts on behalf of the state; its conclusions and judgments, so long as exercised within the limits of the law, being the acts of the state and binding, as such. The nature and character of the profession,

trade, or calling intended to be licensed or regulated, often demands technical knowledge and learning, in order to designate accurately the qualifications which should be possessed by those designing to follow it. In the nature of things, this is a matter outside the ordinary scope of legislative wisdom. The prescribing of the proper qualifications of applicants for licenses by some agent of the state, learned in such profession or calling, is not legislation, but rather the exercise of a mere administrative power. A law, when it comes from the legislature, must be complete; but there are many matters affecting its execution and relating to methods of procedure which the legislature may properly delegate to some ministerial board or officer; and prescribing the qualifications of persons who shall be licensed to follow or engage in the practice of a given trade or profession is one of them. Now, is the law in question open to the objection that it confers upon the board of barber examiners power to prescribe varying standards of qualifications for different applicants, or arbitrarily to grant or refuse a license at will? The authority to prescribe the qualifications of a barber is a general grant of power and does not, like the laws held void in *Noel v. People,* 187 Ill. 587, and *Yick Wo v. Hopkins,* 118 U. S. 356, vest in the board that absolute discretion to grant or withhold licenses. The board is required to exercise the power conferred by prescribing fair and reasonable qualifications, appropriate to the calling intended to be regulated, operating generally and impartially upon all in like situations; and there is no pretense that it has not done so. If it should act arbitrarily or oppressively, its conduct might call for a remedy against the members of the board, but it would not furnish a ground for declaring the act invalid [citing authority]. The constitutionality of a law is to be determined by its provisions, and not by the manner in which it may be administered; * * * and it must be

presumed that the board will exercise fairly and impartially the powers conferred."

It may be argued that the statute involved here does not empower this officer to make uniform rules under which licenses may be granted or withheld; but we think this authority is fairly implied in the power granted. The commissioner has so construed it, and has made a rule governing this very matter; and in these rules this record discloses the following:

"Ruling No............          February 15, 1915.

"Re Sections 1683-r3 and 1821-k.

"Requisitions of Insurance Companies for Appointment of Non-resident Agents will not be honored.

"Section 1683-r3 vests in the commissioner of insurance the general control, supervision and direction of all insurance business transacted in the state of Iowa. In the exercise of such authority, there has come to the attention of this department numerous irregular practices in the transaction of insurance business by nonresident individuals heretofore appointed as agents of companies transacting an insurance business in Iowa. It is the opinion of the commissioner of insurance that a greater degree of satisfactory service from agents representing insurance companies in Iowa could be secured if all agents were residents of the state and subject to service at any time by the legal authorities. Section 1821-k provides that the commissioner of insurance may, for good cause, decline to issue an agent's license. The difficulty encountered in securing service on agents who are not residents of Iowa is held by this department as being good cause for declining to issue such license. Therefore, in order that there may be maintained a proper 'control, supervision and direction of all insurance business,' as provided for in Section 1683-r3, it is the holding of this department that a requisition made by any company in behalf of a nonresident agent will not be honored.

This holding to be effective with beginning of 1917 insurance year."

It is under this rule, so made, that the plaintiff is denied the license sought to be obtained in this suit. This commissioner is made the head of the insurance department of Iowa, given general control, supervision, and direction of all insurance business transacted in the state, and charged by the state with the execution of the laws relating to insurance (Section 1683-r3, Code Supplement, 1913), with authority to issue licenses to agents to represent the company in the state, and with power to refuse for good cause. A cause is good when it conserves the public interest, and we have no hesitancy in saying that the cause upon which this refusal is based, and the rule adopted by this commissioner, are just and reasonable, and made in the interest of the public, and its enforcement serves the public good. It is uniform, and affects all alike. It is a limitation which the legislature itself might have imposed,—a limitation which the courts recognize as within the power of the legislature to make. It is, therefore, a just and reasonable regulation, and one that it could delegate to its commissioner the power to make.

We are not unmindful of the authorities cited by the defendant. Some of them, we think, are distinguishable from the case at bar. Some, we are not inclined to follow. We refer to *Noel v. People*, 187 Ill. 587; *Yick Wo v. Hopkins*, 118 U. S. 356; and *Welch v. Maryland Casualty Co.*, 47 Okla. 293 (147 Pac. 1046).

For the reasons suggested, we think the district court was right in dismissing plaintiff's petition, and the cause is—*Affirmed*.

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.