DON DEE DANNER, petitioner, v. HONORABLE A. V. HASS, Judge, District Court in and for Lucas County, respondent.

No. 51601.

(Reported in 134 N.W.2d 534)

656

April 6, 1965.

John A. Jarvis, of Chariton, for petitioner.

Lawrence F. Scalise, Attorney General, and Joseph H. Zeller, Assistant Attorney General, both of Des Moines, for respondent.

Thompson, J.—On June 8, 1964, the respondent-plaintiff was convicted in justice court, upon plea of guilty, of the offense of violation of Code section 321.285, Code, 1962, which deals with illegal speeding on the public highways, committed on June 6 of the same year. The Department of Public Safety, hereinafter known as the department, suspended his driver's license for sixty days under the authority of section 321.210. The department also suspended the license and plaintiff's automobile registration until the plaintiff should furnish proof of financial responsibility under the provisions of section 321A.17.

Thereupon the plaintiff asked and was accorded an administrative hearing as provided in section 321.211. This hearing was held before a duly authorized agent of the commissioner of public safety. It resulted in an affirmance of the suspension, but its term, so far as the penalty under section 321.210 was involved, was reduced to thirty days. It does not appear that any hearing was held or any determination made as to the suspension under section 321A.17; but on the appeal to the district court under

section 321.215 which deals only with suspension under section 321.210, the validity of section 321A.17 was also challenged.

The trial court upheld the action of the department under both sections 321.210 and 321A.17. The plaintiff brings certiorari, alleging that the court acted illegally in so doing.

I. The department first contends that certiorari will not lie under the record shown here. But since the constitutionality of the statutes under consideration is challenged, we think the question of illegality is present. Under section 321.215, which permits an appeal from the ruling of the administrative officer of the department, the decision of the court of record is final. Certiorari is the only available remedy, and we hold it is a proper one. Hitchcock v. Department of Public Safety, 250 Iowa 1016, 1019, 1020, 98 N.W.2d 1, 3.

II. The plaintiff demanded a jury trial in the district court. This was denied. The court held that it had not been timely requested. This ruling was correct; and we also determine that the statute does not give the appellant in such matters a right to jury trial. The question is not argued here and we give it no further consideration.

It may be noted, however, that the right to trial by jury is not absolute in all civil cases; there is generally not such right in special proceedings; and its denial violates no constitutional provision. Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 327, 154 N.W. 1037, 1067, L. R. A. 1917D .15, Ann. Cas. 1917E 803.

III. While the plaintiff's brief in this court covers other matters, we agree with the trial court that his petition on which the case was tried on appeal in the district court alleged chiefly constitutional defects in the statutes. It is pleaded that the acts of the defendant commissioner of public safety were illegal and contrary to the Constitution of the United States and of the State of Iowa in that sections 321.210(7) and 321A.17 constitute a delegation of legislative and judicial powers without fixing proper standards or rules and regulations and "in terms so vague, uncertain and indefinite as to be unreasonable and utterly void"; that they constitute an unreasonable exercise of police powers and taking of property rights without compensation and

without due process; and that section 321.215, providing for appeal to the courts, is vague, indefinite and uncertain in failing to prescribe trial de novo so that there is again a denial of due process.

IV. At the outset we are confronted with a preliminary question involving the suspension of the license under section 321.210. While it is not raised by the defendant, it requires a decision. The trial court in affirming the decision of the department fixed the beginning of the thirty-day period of suspension of the license to begin on October 24, 1964. Since the operation of this provision was not stayed, it is evident the time of suspension is now long past, and so far as section 321.210 is concerned there is nothing we can do to remedy any harm to the petitioner. Under these circumstances we have often held that we will not decide moot questions. Nitta v. Kuda, 249 Iowa 853, 857, 89 N.W.2d 149, 151; Johnston v. Kirkville Independent School District, 240 Iowa 1328, 1329, 1330, 39 N.W.2d 287, 288, and citations.

At first impression, it appears that these cases decide all questions raised so far as section 321.210 is involved. We cannot restore the plaintiff's license for the thirty days immediately following October 24, 1964. But an examination of the authorities discloses an exception to the rule which we think prevails here, and requires a decision on the merits of the case at bar. The exception is thus stated in 5 Am. Jur.2d, section 768, pages 210 to 212:

"It is a well-established rule that an appellate court may retain an appeal for hearing and determination if it involves questions of public interest even though it has become moot so far as the particular action or the parties are concerned * * *. The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions. * * *

"Among the issues of which the courts frequently retain jurisdiction, because the public interest is involved, although the

immediate issues may have become moot, are questions of constitutional interpretation, issues as to the validity or construction of statutes or the propriety of administrative rulings, or cases having to do with the collection of the public revenue."

This view has been followed in several cases. In McCanless v. Klein, 182 Tenn. 631, 637, 188 S.W.2d 745, 747, which involved the suspension of the license of a liquor dealer for six months, the court said: "Where the validity of asserted powers of a governmental agency has been challenged in a court proceeding and the question may again arise in the course of administration, the court will not decline to pass on the question merely because the time involved in the particular order challenged has expired. Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310."

In People ex rel. Wallace v. Labrenz, 411 Ill. 618, 623, 104 N.E.2d 769, 772, 30 A. L. R.2d 1132, 1136, it is pointed out that, among other reasons for refusing to hold a question moot is that "the very urgency which presses for prompt action by public officials makes it probable that any similar case arising in the future will likewise become moot by ordinary standards before it can be determined by this court." The same principle was applied in Payne v. Jones, 193 Okla. 609, 146 P.2d 113, 116, where it was also held that the determination of moot questions lies in the discretion of the court, but that such discretion should be exercised in favor of decision when questions of public interest are involved.

Other courts have adhered to the same rule, that even moot questions should be determined when they involve matters of concern to the public generally, and especially when the situation is such that often the matter will be moot before it can reach an appellate court. We have concluded that our discretion should be exercised in favor of a decision on the merits in the instant case.

V. The major point urged by the plaintiff is that section 321.210 is unconstitutional, as applied to the situation involved. The petition, while alleging unconstitutionality, does not tell us what parts of the Constitution of the United States and of Iowa

are thought to be transgressed. But we find these stated in the plaintiff's brief and argument. It is there said that they are Article I, section 9, Article III, section 1, and Article V, section 1, of the Iowa Constitution, and Amendments 5 and 14 to the Constitution of the United States. Article I, section 9, supra, and the two amendments to the United States Constitution are due process of law clauses and raise the same question; while Article III, section 1, and Article V, section 1, supra, are each relied on to show the claimed improper delegation of legislative power. We shall consider this latter question first.

VI.   Section 321.210, so far as material here, says: "The department is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:
"* * *

"7. Has committed a serious violation of the motor vehicle laws of this state."

It is the contention that the words "serious violation" do not set up a sufficient or intelligible standard; and that to permit the department to place its own interpretation upon them is to permit it to legislate; that is, there is an unconstitutional delegation of legislative power to the department.

In Spurbeck v. Statton, 252 Iowa 279, 283, 284, 106 N.W.2d 660, 663, we stated some thoroughly established principles which must be followed in all cases where questions of constitutionality are involved. All presumptions are indulged in favor of constitutionality; one who attacks a statute, alleging unconstitutionality, must prove its invalidity beyond a reasonable doubt; that a law may work hardship does not render it unconstitutional; if any reasonable basis may be conceived which supports the statute, it will be upheld, and the challenger must negative all possible bases; the courts are not concerned with the wisdom, justice, policy or expediency of a statute; and we will adopt a liberal interpretation of the Constitution in favor of the constitutionality of legislation.

The question, then, is, do the words "serious violation of the motor vehicle laws of this state" give a sufficient guide or standard for the department in determining whether to suspend

licenses? It is not disputed that the plaintiff had committed a violation; he pleaded guilty to a speeding charge, and his own signed statement in the record shows that he was convicted of traveling 91 miles per hour in a 70 mile zone; and that he was passing three trucks at the time of the violation. A contention that this statement is not legally in evidence will be dealt with later; but, as will appear, we think it was properly there.

In Spurbeck v. Statton, supra, we said: "The giving or suspending of licenses to operate motor vehicles on the public highways is clearly within police power of the state. The danger from reckless driving is great; * * *." Loc. cit. 252 Iowa 290, 106 N.W.2d 666. It is true that in Spurbeck we were dealing with a conviction for operating while intoxicated, rather than a "serious violation" under paragraph 7 of section 321.210. But the language there used surely decides at least that the police power extends to the grant or revocation of licenses.

It is evident that there must be not only a violation of the laws, but a "serious" violation, to warrant a suspension of license, under section 321.210, supra. It is at this point that the department makes its determination; does it have a sufficient standard in the word "serious" to permit it to use its discretion and judgment? The question is not free from difficulty.

However, the trend of authority is to uphold a considerable vesting of discretion in the department for the purpose of promoting the public safety. The use of motor vehicles on the highways is so patently proven dangerous that we should be slow to strike down any legislation designed to alleviate at least some of the attendant hazards.

Our own authorities indicate the proper determination of the question. In Noble v. English, 183 Iowa 893, 167 N.W. 629, we upheld the validity of a statute which gave the state insurance commissioner the right to refuse a license to sell insurance in Iowa "for good cause"; the "good cause" in that case being solely that the applicant was a nonresident of Iowa. In Hubbell v. Higgins, 148 Iowa 36, 126 N.W. 914, Ann. Cas. 1912B 822, validity was found in a statute which gave hotel inspectors power to determine whether a hotel was of "approved fireproof construction" and whether "approved sanitary conditions" were

maintained; and in Gilchrist v. Bierring, 234 Iowa 899, 907, 14 N.W.2d 724, 728, no constitutional defect was found in a statute which gave to the board of cosmetology examiners power to prescribe rules and regulations as to sanitary requirements. The power given to the state highway commission to make and use plans for the construction of roads was held valid in McLeland v. Marshall County, 199 Iowa 1232, 1238, 201 N.W. 401, 403, 203 N.W. 1. In Noble v. English, supra, is found this pertinent language:

"It is manifest that the legislature, in seeking to control the management of businesses subject to its control and management, and the manner of exercising rights conferred, cannot always anticipate and foresee all the conditions that may arise, affecting the conduct of the business or the exercise of the right, which may affect the public interest. It may, therefore, delegate to the ministerial officers certain powers, somewhat judicial in their nature, the exercise of which is essential to the proper and effectual carrying out of the purpose and object of the law itself * * *." Loc. cit. 183 Iowa 895, 167 N.W. 629.

Persuasive authority is not lacking in other jurisdictions. In La Forest v. Board of Commissioners, District of Columbia, 92 F.2d 547, 548, the validity of an Act was upheld which was couched in these terms: " 'Except where for any violation of this Act * * * revocation of the operator's permit is mandatory, the commissioners or their designated agent may with or without a prior hearing revoke or suspend an operator's permit for any cause which they or their agent may deem sufficient'." It will be observed this goes much further than our own statute in permitting exercise of judgment by the administrative officers. Where we have "serious violation" the District of Columbia Act has " 'any cause which they or their agent may deem sufficient'." The same challenge of vesting legislative power in administrative officers was made. But the Court of Appeals there said: "The delegation, when correctly understood, is confined to the right to take proper safeguards for the protection of life and limb through reasonable rules regulating traffic in the District, and the right to revoke or suspend the permit is limited to those cases in which there has been a breach, by the holder, of these

reasonable rules. Considered in this aspect, it cannot be properly urged that Congress may not delegate a reasonable discretion to the Commissioners in carrying out the legislative intent expressed in the Act." Loc. cit. 92 F.2d 549.

In Louisville, Henderson & St. Louis Railway Co. v. Lyons, 155 Ky. 396, 400, 402, 403, 159 S.W. 971, 973, 974, 975, 48 L. R. A., N. S., 667, 671, 672, there was involved an injury to a child under sixteen years of age. The applicable statute was: " 'Nor shall any child under sixteen years of age be employed in any occupation dangerous or injurious to health or morals, or to lives or limbs, and as to these matters, the decision of the county physician or city health officer, as the case may be, shall be final'." Speaking to the contention that this involved an illegal delegation of legislative authority to the physician to determine whether the occupation was dangerous, the Kentucky Court of Appeals said: "There are many laws enacted by the legislative department of the state containing administrative features that it is necessary to confide to agents selected by the Legislature. * * *

"When the Legislature confided to the physician or officer mentioned in this act the right to say whether an employment was dangerous, it merely conferred upon this officer the authority to find the existence of a fact and upon his finding the legislative act becomes operative."

We are unable to draw a distinction between the power to determine whether an occupation is "dangerous", and to determine whether a violation of the motor vehicle laws is "serious." The Kentucky case, while of course not controlling in Iowa, is highly persuasive. Our own cases, cited above, tend strongly in the same direction. It will be noted that we are not concerned here with whether there has been a violation; that fact is proven by the plea of guilty and conviction of speeding. The only question is whether the department was constitutionally empowered to decide whether the violation was serious. The statute, in fact, at this point somewhat favors the license holder. It is not every violation which empowers the department to suspend his license; so far as we are concerned here, it must be a "serious" one. We find the Act impervious to the constitutional challenges here discussed.

VII. While the assigned errors do not clearly raise the question of whether the Acts of the department under section 321.210(7), supra, were in themselves unconstitutional, arbitrary and capricious, the point is argued in the plaintiff's brief, and we shall assume this question is properly before us. It may shortly be disposed of. It is contended that there is no sufficient evidence to support a finding that the violation was serious. The record shows that the plaintiff was driving at 91 miles per hour in a 70-mile zone, while in the act of passing three trucks and a passenger car. This was the charge against him, and he entered his plea of guilty. It is his thought that it was not sufficiently shown this was serious. We are unable to agree. High speed on the highways, 21 miles beyond the maximum permitted by law, and with several other vehicles on the same stretch of the road at the time, is in itself evidence of seriousness; at least to the point that a finding thereof by the authorized agency of the state cannot be said to be beyond its power, or to be arbitrary, capricious or unreasonable. Nor do we think the seriousness of the violation can in all cases be judged by the results. A violation may be serious although it causes no damage; it is its potentiality for harm by which it must be measured. The Supreme Court of Appeals of Virginia has said: "Excessive speed upon the highway is not a trifling matter. It is generally attended with danger, likely to cause injury and damage." Lamb v. Rubin, 198 Va. 628, 633, 96 S.E.2d 80, 84.

VIII. We are cognizant of plaintiff's claim that the record made before the departmental officer who heard his appeal from the suspension is not properly before us, and was not properly before the trial court. Here he contends that he was denied due process of law, because he did not have a de novo hearing on his appeal to the district court; that he was not faced by his accusers, had no opportunity to cross-examine, and "finds nothing reported as acceptable evidence on this appeal." We set out herewith section 321.215, which governs appeals from license suspensions under section 321.210. Section 321.215 reads: "Any person denied a license or whose license has been canceled, suspended, or revoked by the department except where such cancel-

lation or revocation is mandatory under the provisions of this chapter shall have the right to file a petition within thirty days thereafter for a hearing in the matter in a court of record in the county wherein such person shall reside and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon thirty days' written notice to the commissioner, and thereupon the court shall hear and determine the matter as an original proceeding upon a transcript of all the proceedings before the commissioner, and upon additional evidence and other pleadings as the court may require. The decision of the court shall be final."

The statute just quoted leaves something to be desired in the way of clearness and workability. But we must work with the material provided us.

We turn to the complaint that the plaintiff was not accorded a trial de novo on his appeal from the administrative order. But appeals from administrative proceedings generally invoke the original rather than the appellate jurisdiction of the courts, in the absence of a contrary intent shown by the statutes. In re Community School District of Farragut, 250 Iowa 1324, 1328 to 1330 inclusive, 98 N.W.2d 888, 890 to 892 inclusive. The question is made free from all doubt, however, by section 321.215, supra.

The court, on appeal from the decision of the administrative officer, is directed to hear and determine the matter as an original proceeding. This seems to give the aggrieved party an opportunity to try his case fully, with one exception. That is the provision for use of the transcript of the proceedings before the commissioner; but it is also provided that there shall be such other evidence and pleadings as the court may require. So in the case before us, there was before the court the record of the hearing before the administrative agent. The plaintiff also testified; then, after plaintiff's objection to the use of the transcript in the administrative hearing, both parties rested. No request for the right to offer additional evidence was made by the plaintiff.

It is apparent, therefore, that he is not now in a good position to complain that he was denied the right to introduce

evidence. We may also dispose of that part of the proceedings before the officer which consists of a signed statement by the plaintiff which admits his conviction of violation of section 321.285, including traveling 91 miles per hour in a 70-mile zone. This is a written admission, and was proper evidence to be received.

As to any witnesses who appeared before the hearing officer, if any there were, the plaintiff was there represented by counsel and had the right to cross-examine if he so elected. There are, however, some matters of hearsay and possibly other incompetent evidence before the officer shown in the return to the writ of certiorari, which is the only record before us. No objection to them at the time they were offered at the administrative hearing is shown; but the hearing was evidently highly informal, and it may have been difficult for plaintiff's counsel to know just what was being offered or considered.

However, the legislature has the right to say generally what rules of evidence shall apply. The rule is set forth in 16A C. J. S., Constitutional Law, section 621, pages 814 to 816 inclusive: "The legislature in its discretion may, without denial of due process of law, prescribe changes in the rules of evidence for the trial of civil cases, * * * subject in all cases, however, to the limitation that it may not preclude a party from presenting the facts supporting his theory of the case. It may, for example, create rebuttable presumptions, or destroy presumptions, regulate the burden of proof and the admissibility as well as the weight to be accorded to and the sufficiency of evidence, and may provide that official certificates, records, or orders, and other writings, shall constitute prima facie evidence of the facts stated therein."

In the case at bar, the legislature has in effect provided that the transcript of the administrative proceedings shall be admissible evidence. There was no denial, either in law or in fact, of the right of the plaintiff to introduce any evidence he wished to support his case.

A similar situation was before the Minnesota Supreme Court in State Fire Marshal v. Sherman, 201 Minn. 594, 595, 277 N.W. 249, 250. The court said: "Attacked as a violation of the con-

stitutional requirement of due process of law is the following portion of section 5966: 'upon such trial the order of condemnation shall be prima facie evidence of the existence of the facts therein recited.'

"The constitutional validity of such statutory enactments is so well established that further discussion would render us prolix."

Our own statute merely provides, as noted above, that the transcript shall be received as evidence; no doubt sufficient to make a prima facie case if nothing else is offered, and the transcript supports the findings of the administrative officer. It is a part of the trial, just as many other records of public officers are by statute admissible. Thus, reports of investigations made by the county medical examiner or his assistants, records or reports of autopsies and many other records of the county examiner's office are made admissible, under section 339.9, Code of 1962. Section 86.29 provides that in appeals from the findings and rulings of the industrial commissioner in workmen's compensation cases the transcript of the hearing before the commissioner shall be the record in the district court, "and no additional evidence shall be heard." This goes much further than the challenged statutory provision in the case now before us. But our workmen's compensation law has been upheld as affording due process in Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 154 N.W. 1037, L. R. A. 1917D 15, Ann. Cas. 1917E 803, supra.

We do not imply that the court may overrule the factual determinations of the administrative officer or board. In the original proceeding provided for by the statute, the court's function is to determine the legality of the administrative proceedings, and whether there is substantial material and competent evidence to support the findings of fact therein made. It may not substitute its judgment on the facts for that of the administrative body.

IX. The same complaints are lodged against the order of the department requiring proof of financial responsibility under chapter 321A of the Code. These are fully answered by our discussion in previous divisions of this opinion, and by Doyle

v. Kahl, 242 Iowa 153, 46 N.W.2d 52. In this case we examined the validity of the financial responsibility law, and found it free from constitutional defects. It is to be observed that the Act is clearer in its designation of standards to be applied than is section 321.210(7), which we have examined at some length above. The applicable section here is 321A.17, which so far as pertinent says:

"1. Whenever the commissioner, under any law of this state, suspends or revokes the license of any person upon receiving record of a conviction or a forfeiture of bail, the commissioner shall also suspend the registration for all motor vehicles registered in the name of such person, except that he shall not suspend such registration, unless otherwise required by law, if such person has previously given or shall immediately give and thereafter maintain proof of financial responsibility with respect to all motor vehicles registered by such person."

The suspension was made here under section 321.210(7), upon the commissioner receiving a record of the plaintiff's conviction of violation of section 321.285. Thereupon the statute is mandatory in requiring the suspension of registration of all motor vehicles registered in the name of the convicted party. That is what was done and we find the department did no more than the terms of the Act demand.

It will be noted that our Act requires the commissioner to insist upon a showing of financial responsibility when a judgment has been entered against an owner or operator of a motor vehicle resulting from an accident, section 321A.5 et seq.; and when there has been a conviction of a violation of the motor vehicle laws, section 321A.17, supra, becomes applicable. The plaintiff cites Rosenblum v. Griffin, 89 N. H. 314, 197 A. 701, 115 A. L. R. 1367. But the case upholds the validity of the New Hampshire financial responsibility statute, even though it required immediate suspension of the licenses of all drivers involved in an accident, and of the registration of all vehicles involved, before there was any determination of negligence. The opinion quotes from Re Opinion of the Justices, 81 N. H. 566, 568, 129 A. 117, 119, 39 A. L. R. 1023: " 'A general requirement that a motor vehicle may be operated upon the public highways

only when adequate provision has been made for compensation to persons injured because of fault in such operation is a valid law.'" The opinion in Rosenblum then went on to hold that such provision could constitutionally be required even before the question of fault is determined. The case did in fact hold that a provision of the Act which required proof of financial responsibility from all owners or operators of mortgaged vehicles was discriminatory; but we have no such situation here.

We have examined the authorities cited by the plaintiff and do not find them controlling. The question of what are sufficient standards and guidelines is a difficult one, and the cases are not in entire agreement. The modern trend is in the direction of construing statutes designed to promote safety upon the highways liberally in order to uphold their constitutionality whenever reasonably possible. In fact, this is the general rule as to all statutes whose constitutionality is challenged; it seems especially applicable to exercises of the police power designed to curb the deaths, injuries and property damage resulting from illegal or careless use of the public highways. The modern motor vehicle is a tremendous utility and convenience; it is also, when improperly used, a potential instrument of death and destruction. This language from Cook v. Hannah, 230 Iowa 249, 252, 297 N.W. 262, 264, is particularly applicable here: "The power to declare legislation unconstitutional is one which courts exercise with great caution, and only when such conclusion is unavoidable. * * * And the presumption in favor of constitutionality is especially strong where the statute, like the one before us, was enacted to promote a public purpose * * *." The statute there under consideration related to taxation; surely the "public purpose" is at least equally apparent and important when the Act involves measures designed to conserve the lives and limbs of the citizenry.

For the reasons set forth above the writ of certiorari is—Annulled.

All JUSTICES concur.