UTAH ASS'N OF LIFE UNDERWRITERS v. MOUN-
TAIN STATES LIFE INS. CO. et al.

No. 3654.   Decided June 11, 1921.   Rehearing Denied September
12, 1921.   (200 Pac. 673.)

1.  INSURANCE—WRIT OF CERTIORARI TO INSURANCE COMMISSIONER
    NOT GOVERNED BY COMMON-LAW RULES.  Common-law rules gov-
    erning the writ of certiorari are inapplicable under section 1157,
    Comp. Laws 1917, providing that the action of the Insurance
    Commissioner shall be subject to review by any court of com-
    petent jurisdiction.

2.  INSURANCE—COMPLAINING PARTY MAY HAVE ACTION OF INSUR-
    ANCE COMMISSIONER REVIEWED.  Under Comp. Laws 1917, § 1157,
    providing that the action of the Insurance Commissioner shall
    be subject to review by any court of competent jurisdiction,
    means that the Insurance Company may appeal to a court of
    competent jurisdiction from the suspension or revocation of
    authority to carry on the business of life insurance, since,
    under the Constitution, if one party to a proceeding is given the
    right to have a matter reviewed in the courts, the other party
    must also be given the same right of review, the party bringing
    the complaint against an insurance company has the right of
    review by a court of competent jurisdiction.[1]

3.  INSURANCE—COURT WILL EXAMINE EXCEEDING OF AUTHORITY BY
    INSURANCE COMMISSIONER.  Under Comp. Laws 1917, § 1157,
    providing that the action of the Insurance Commissioner shall
    be subject to review by any court of competent jurisdiction,
    while the Supreme Court will not review the evidence or
    mere errors of judgment of the Commissioner, yet it will de-
    termine whether the Commissioner is exceeding his authority
    in granting or renewing a license to carry on the business of
    life insurance.

4.  INSURANCE—SALE OF STOCK WITH POLICIES OF LIFE INSURANCE
    HELD CONTRARY TO STATUTES.  Under Comp. Laws 1917, §§ 1167
    and 1168, prohibiting a sale of shares of stock promising re-
    turns and profits as an inducement to insurance or in con-
    nection therewith, etc., the sale of life insurance, together with
    stock, which was to be paid for by dividends due on the policy,
    held contrary to the statute, though it was claimed that the sale
    of the stock was not an inducement to the insurance.

[1] *Industrial Com. of Utah* v. *Evans*, 52 Utah, 394, 174 Pac. 825.

5. INSURANCE—SALE OF STOCK WITH POLICIES NEED NOT BE SOLE INDUCEMENT TO COME UNDER PROHIBITION OF STATUTE. Under Comp. Laws 1917, § 1167, providing that it shall be illegal for any insurance company to sell stock as an inducement to insurance, or in connection therewith, on the question whether an insurance company is violating the statute, it is not necessary that the stock subscription contract should be the sole, or even the controlling, element inducing the purchaser to buy insurance, but merely that it should act as an inducement to buying insurance.

6. INSURANCE—POLICE POWER EXTENDS TO CONTRACTS OF INSURANCE. Contracts of insurance necessarily fall within the police power of the state, and may be regulated at least within reasonable limits.

7. STATUTES—CONSTRUED IN FURTHERANCE OF PURPOSE INFLUENCING ADOPTION. Statutes must be construed and applied in furtherance of the purpose or object which induced their adoption.

8. INSURANCE—INSURANCE STATUTES SHOULD BE LIBERALLY CONSTRUED TO PROTECT THE PUBLIC. Statutes governing life insurance contracts must be liberally construed so as to protect the public.

9. INSURANCE—RELATIONSHIP OF COMPANY WITH OTHER CORPORATIONS COMES WITHIN JURISDICTION OF COMMISSIONER. Illegal relationship of an insurance company with other corporations comes within the jurisdiction of the Insurance Commissioner, and not within the jurisdiction of the court.

On Application for Rehearing.

10. INSURANCE—CONDITIONS SHOULD BE IMPOSED IN LICENSING COMPANY VIOLATING STATUTE. A life insurance company guilty of carrying on business in violation of the statutes should not have its license to transact business set aside and annulled unconditionally, but will be given leave to apply to the Commissioner for a license to transact business in case it shall comply with the law and with the conditions imposed by the court and the Commissioner.

Original petition by the Utah Association of Life Underwriters against the Mountain States Life Insurance Company and Insurance Commissioner of Utah, for certiorari to the Insurance Commissioner.

Order of the Commissioner granting defendant company a license to transact business SET ASIDE AND ANNULLED, on rehearing, with permission granted defendant company to apply for permit to transact business on compliance with statutes and conditions imposed in opinion and lawful orders of the Commissioner.

*D. M. Draper,* of Salt Lake City, for plaintiff.

*Dan B. Shields,* of Salt Lake City, for defendants.

FRICK, J.

The plaintiff filed a petition in this court against the Insurance Commissioner of Utah, hereinafter referred to as Commissioner, and the Mountain States Life Insurance Company, hereinafter called Company, in which it prayed that this court require said Commissioner to certify to this court the record of certain proceedings had before him, and to review said proceedings and to set aside and annul the acts of said Commissioner in granting the said Company a license or permit to carry on the business of life insurance in this state.

In the petition the plaintiff in substance alleges that it is composed of taxpayers, and that it is the party beneficially interested in this proceeding; that on the 20th day of February, 1921, the plaintiff had filed in the office of the Commissioner certain charges against the Company, and had also filed a protest against granting a license or permit to the Company to carry on the business of life insurance in this state; that thereafter, on the 28th and 29th days of March, 1921, the plaintiff and the Company appeared before said Commissioner and that a hearing was had before him in which evidence was produced by both parties both in support of and against the charges and protest aforesaid, and that at the time of concluding the said hearing the Commissioner, over the protest of the plaintiff, renewed the license of said Company; that the renewal of said license is contrary to the facts found by the Commissioner, citing the particulars, etc.,

and is contrary to our statute, also citing the particulars which will hereinafter be more particularly set forth.

The writ was duly issued requiring said Commissioner to certify to this court all of the evidence and a full record of the proceedings had before him on the hearing aforesaid. The Commissioner, in due time and form, complied with said writ, and all the evidence and a full record of the proceedings is now before us.

The Company and the Commissioner, by their attorney, appeared and filed a motion to quash the writ upon the sole ground that said "application for a writ of review does not state facts sufficient to warrant or justify the issuance of the writ of certiorari." The attorney for the defendants insists that this is not a case or a proceeding in which this court is authorized to issue a writ of certiorari. It is only fair to counsel to state that he treats the writ issued in this case as a purely common-law writ of certiorari, and that the proceedings in this court must be considered and treated in accordance with the rules with respect to such writs prevailing at common law. In so doing, counsel, in our judgment, is clearly in error. He has evidently overlooked the fact that our statute (Comp. Laws Utah 1917, § 1133, as that section is amended by chapter 21, Laws Utah 1919) requires the Commissioner to grant the hearing which was requested by plaintiff and to pass upon the very objections raised by it at the hearing. In addition to that section, section 1154 prescribes the provisions that life insurance policies must contain in this state, while section 1155 prohibits certain provisions in such policies.

Then, again, in our judgment, counsel for the defendants has placed a too favorable construction upon certain other sections of our statute governing life insurance policies to which reference will be made hereinafter, and has entirely overlooked the provisions of section 1157, which specially provides that the action of the Commissioner "shall be subject to review by any court of competent jurisdiction."

It is true that in the section just quoted from the only matter referred to is the suspension or revocation of authority

to carry on the business of life insurance, and that the action of the Commissioner in that regard may be reviewed. It is, however, also true, as pointed out in the case of *Industrial Com. of Utah* v. *Evans*, 52 Utah, 394, 174 Pac. 825, that, if one party to a proceeding is given the right to have a matter reviewed in the courts under our Constitution, the other party to the proceeding must also be given the same right of review although only one party may be expressly mentioned in the statute. That doctrine has special appli-          2 cation here, for the reason that if the statute were literally applied the only party to a proceeding who could have the acts of the Commissioner reviewed by the courts would be the insurance company, while the public or any other interested party would be excluded from the courts.

This is not the only state that has such a statute. Such a statute is in force in Massachusetts, and the Supreme Judicial Court of that state has held that it has the power to review the acts of the Commissioner in a proceeding like the one here in question. See *Ætna Life Ins. Co.* v. *Hardison*, 199 Mass. 181, 85 N. E. 407, and *New York Life Ins. Co.* v. *Hardison*, 199 Mass. 190, 85 N. E. 410, 127 Am. St. Rep. 478.

While it is true that in proceedings of this character, although the power be conferred under a special statute, yet this court will not review the evidence, nor mere errors of judgment of the commissioner, where, however, as here, it is contended that the Commissioner has exceeded .his authority in granting or renewing a license to carry on the business of life insurance in this state by refusing to follow the provisions of our statute, we are required to examine into the acts of the Commissioner to the extent at least of          3 determining whether his acts in granting the license are supported by the provisions of the statute or are contrary thereto. If he has granted a license contrary to the provisions of the statute under which he is empowered to act and must act, then he has exceeded the power or jurisdiction with which he is clothed by statute, and the license should be revoked. That is the precise question that is involved here.

We are clearly of the opinion, therefore, that the motion

to quash should be, and it is accordingly, overruled.

In proceeding to a consideration of the merits of the controversy it will be necessary to refer to certain provisions of our statutes relating to the business of life insurance. Comp. Laws Utah 1917, § 1167, provides:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount of payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes. Nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon; nor shall any such company or any officer, agent, solicitor, or representative thereof pay, allow, or give, or offer to pay, allow, or give, directly or indirectly, as an inducement to insurance, any rebate or premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any paid employment or contract for service of any kind; nor any valuable consideration or inducement whatever, not specified in the policy contract of insurance, nor give, sell, or purchase or offer to give, sell, or purchase as inducement to insurance or in conjunction therewith, any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits to accrue thereon; nor anything of value  *   *   * not specified in the policy."

Section 1168, so far as material here, provides that no life insurance company shall and—

"no corporation or stock company, acting as agent of a life insurance company, nor any of its agents, officers, or employés, shall be permitted to agree, sell, or offer to sell, give or offer to give, directly or indirectly, in any manner whatsoever, any share of stock, securities, bonds, or agreement of any form or nature, promising returns and profits as an inducement to insurance, or in connection therewith.  *   *   * "

The section further provides that in case any company or agent offends against the foregoing provisions or any of them it shall be the duty of the Commissioner to revoke the license.

We have quoted at length from the statute in order to show that it was the purpose and intent of the Legislature to have the business of life insurance conducted free and independent of any other matter of whatever kind or nature, and so that

the person who is solicited to enter into a life insurance con-
tract may do so entirely upon the merits of the contract of
insurance presented to him.   Life insurance contracts are so
important in our modern life and affect so many persons of
all classes, including widows and orphans, and are so benefi-
cial in their effects, that they may well receive the considera-
tion and protection of the lawmaking power.   If, therefore,
that power has spoken and has regulated the matter of in-
surance contracts, and has undertaken to prevent fraud and
misrepresentation so far as possible for the protection of the
insured, and all those who contemplate entering into insur-
ance contracts, it is the solemn duty of the courts to enforce
the provisions of the statute when called on to do so.   The
question therefore is, Has the Company, or any one acting
in its behalf or for its benefit, violated any of the foregoing
provisions of our statute?

The uncontradicted evidence—indeed, the application for
insurance—shows that in soliciting prospects to enter into
contracts of insurance the soliciting agents of the company
or of those acting for its benefit are offering to sell and are
selling a limited number of the shares of the capital stock of
the company in connection with such insurance.   It is, how-
ever, strenuously insisted on behalf of the company that the
stock so offered is not offered as "an inducement to insur-
ance."   The contract to purchase such stock is, however,
made a part of the application for insurance, and is headed
"Subscription and contract for stock."   A promissory note
is executed by the prospect for the stock, which reads as
follows:

"For value received I hereby promise to pay to the Home Sav-
ings & Trust Company, one hundred dollars ($100); with interest
at the rate of six (6) per cent. per annum from date of issue of
policy, in accordance with attached contract, which is made a part
hereof.   This note is nonnegotiable and void if detached from con-
tract."

The contract referred to reads as follows:

"I hereby subscribe for fifty (50) shares of the capital stock of
the Mountain States Life Insurance Company for which I agree
to pay one hundred dollars ($50 the par value of said stock and $50

surplus), payable at my option within thirty (30) days from the date hereof in case or may be paid for solely out of the dividends accruing on my charter membership policy in said company for $5,000, or out of the dividends on any policies which may be issued to me by said company. Subject to approval and acceptance by said company.

"The attached note, which is a part of this contract, is given in payment for fifty (50) shares of the capital stock ($50 the par value of said stock and $50 the surplus) of the Mountain States Life Insurance Company.

"I hereby authorize the secretary of the Mountain States Life Insurance Company to pay such cash dividends as may be apportioned to my policy of $5,000, or any other policy on my life in the said company, to the Home Savings & Trust Company, of Denver, Colo., trustee, for the payment of said note, until said note with interest is paid in full; at which time the said note shall be canceled and said stock shall be delivered to the undersigned. Any dividends that may be paid on above-mentioned stock shall be applied on said note.

"It is hereby agreed that this note is given and accepted with the understanding that it is payable only in the manner stated above and should the maker not be insured in said company or allow said policy of $5,000 to lapse before said note is paid in full, or fails to pay the same in cash as above provided, he shall not be entitled to any of said dividends credited on said note, and said note and contract shall be canceled and both parties relieved from any further liability hereunder.

"In event of the death of the maker of said note, before it is paid in full, the beneficiary under the charter membership policy of $5,000 shall have the right at the time the proceeds of the policy shall be paid by the Mountain States Life Insurance Company, to elect to pay the balance due on said note and take the stock; and in event the beneficiary does not so elect the said beneficiary shall be entitled to receive in cash the amount of dividends credited on said note and said note and contract shall be canceled and both parties relieved from any further liability hereunder."

In this connection the evidence is clear and without conflict that the purpose is to sell 50 shares of the capital stock of the Company with each $5,000 policy of insurance written. It is also a rule of the Company that no one can acquire more than 250 shares of the stock in connection with insurance, and each policy holder is thus limited to five policies of $5,000 each. In order to dispose of the stock more expeditiously the Company has entered into a contract with what

is called the Mountain States Service Company to solicit insurance and to sell 250,000 shares of the Company's stock in connection with such insurance for a stipulated commission. The officers and incorporators of the Company are also to a large extent the officers and incorporators of the Mountain States Service Company. In soliciting insurance it is conceded that the solicitors lay great stress upon the fact that each person who obtains a policy and subscribes for his allotted shares of the capital stock has thus become a stockholder in the Company, and will have a voice in determining its affairs, and that he may accomplish all this without paying cash for the stock, but that the same will be paid out of the dividends or profits which will accrue to the policy of insurance which the subscriber holds. It will be observed that this scheme or plan of selling stock must be limited to a certain number of individuals. That is, when the 250,000 shares of stock have all been sold those entering into contracts of insurance with the Company thereafter cannot obtain stock in connection with their insurance. The prospect who enters into the present scheme or plan is thus informed by the solicitor that, if he takes a $5,000 policy in the Company and subscribes for the amount of shares of stock allotted to each $5,000 policy in becoming a stockholder in the Company, he will become such without additional cost to himself in view that the stock may be paid for out of the dividends or profits accruing to his policy.

While the Company concedes that the solicitors for insurance make the representations aforesaid, it also insists that the representations are true, and are merely the result of the method or plan pursued by it in soliciting and writing insurance. The Company insists that its method or plan of insurance is not contrary to the provisions of our statute because any one may obtain a policy without subscribing for stock and any one may become a stockholder in the Company without taking insurance. The Company contends, therefore, that the contract of insurance is entirely independent of the stock subscription contract, and that each prospect has the absolute choice of entering into a contract of insurance with-

out subscribing for stock, or may become a subscriber for stock without entering into a contract for insurance. In this connection it is important to state, however, that the evidence is undisputed that at the time of the hearing only 7 shares of the capital stock of the Company had been disposed of under the plan we have outlined above, which were not disposed of in connection with a policy of insurance, and those 7 shares were issued as qualifying stock to directors of the Company. While no doubt it is true that each prospect has the choice of entering into an insurance contract without subscribing for stock, it is, nevertheless, true only in the sense that he has a choice of entering into or refraining from entering into any contract of any kind with the soliciting agent. The undisputed evidence that no stock has been sold under the present plan of the Company except in connection with insurance is quite significant and convincing to **4** the disinterested mind 'that the Company's capital stock is in fact being sold both "as an inducement to insurance" and "in connection therewith," which is in direct violation of the provisions of our statute. The fact that the so-called subscription for stock is made a part of the application for insurance is also very significant, and constitutes in and of itself strong evidence that the stock is sold in connection with insurance. If the transaction relative to the stock subscription is entirely independent of the contract of insurance, why make it a part of the application for insurance? Obviously it is made a part of the application for insurance because it is intended to dispose of the stock in connection with the insurance contract.

In determining whether the plan of the Company in disposing of its stock contravenes the provisions of our statute it should be remembered that it is not necessary that the subscription contract is the sole, or even the controlling, element which induced the prospect to take a policy of insurance under the Company's plan. In the language of the statute, it is sufficient if the stock transaction constituted "an inducement to insurance," or is made "in connection therewith." That is, that it is entered into in connection with the insur-

ance contract and as a substantial part thereof. If the contract for the stock constitutes only one of the elements which induced the prospect to enter into the contract of insurance, and such contract is entered into in connection with the insurance, then the stock transaction is in direct violation of the provisions of our statute, and can-, not stand. It also comes squarely within the principle laid down by the Supreme Court of Illinois in the case of *People v. Commercial Ins. Co.*, 247 Ill. 92, 93 N. E. 90, where the question of what constitutes a sufficient consideration or inducement is discussed.

To apply the foregoing rule in no way interferes with the Company's right to dispose of its capital stock. Contracts of insurance necessarily fall within the police power of the state, and it may therefore regulate such contracts within at least reasonable limits. It is elementary doctrine in this jurisdiction that statutes must be construed and applied in furtherance of the purpose or object which induced their adoption. That the statutes governing life insurance contracts must be liberally construed, and so as to protect the public, is held by all the courts having statutes that are like or similar to ours. See Joyce on Insurance (2d Ed.) § 190e. The language of our statute is very broad and comprehensive, and a mere cursory reading of it discloses its dominant intent and purpose. Moreover, we have a right to assume that every provision of the statute which is prohibitive in its effect is based upon some evil which, in the minds of the Legislature, required regulation. Then, again, it is manifest that the statute was enacted for the protection of the public and especially for the protection of those who are solicited to enter into life insurance contracts who may lack the experience and the opportunity to guard themselves against the wiles of the experienced life insurance solicitor. The statute should therefore be construed so as to accomplish its purpose and so as to protect those it intends to protect. If the plan that is pursued by the Company in disposing of its capital stock as outlined above is not contrary to the provisions of our statute, then we cannot conceive of any plan

which merely disposed of the Company's stock in connection
with the contract of insurance that would be contrary there-
to. After a careful consideration of all of the evidence, and
especially the documentary evidence which is not and cannot
be contradicted or explained, we are all agreed that the plan
pursued by the company in taking subscriptions for stock in
connection with contracts of insurance is clearly violative of
the provision of our statute, and if permitted by this court
would soon lead back to the very practices in writing life in-
surance which the statute, we think wisely, prohibits.

While it is true that plaintiff's counsel also insists that the
Company has either offended against or has failed to comply
with certain other provisions of the statute, and while it is
true that at the time the Commissioner issued the first permit
or license to the Company to transact business in this state
such was the case, yet it is equally true that at the time of
the hearing these defects had been cured. We specially refer
here to the claim of insufficient capital to do business in this
state, and that the policy of insurance contained certain pro-
visions which were in derogation of our statute. At the hear-
ing before the Commissioner it was made to appear that the
form of the policy and the provisions contained therein now
conform to our statute, and that the capital of the Company
is sufficient to authorize it to do business in this State.

While there are other objections raised by plaintiff's coun-
sel, yet those all relate to the relationship of the Company
with the Mountain States Service Company and a trust com-
pany, and thus come within the jurisdiction of the
Commissioner, and not within the jurisdiction of this
court. If such relationship militate against the stabil-
ity or welfare of the Company, or against the best interests
of its policy holders, the Commissioner, and not the courts,
must correct the evil. He is given ample power to do so.

For the reasons stated we are forced to the conclusion that
the plan of the company in disposing of its capital stock in
connection with writing insurance is contrary to the provi-
sions of our statute. It follows, therefore, that the Commis-
sioner exceeded his authority in licensing or permitting the

Company to carry on the business of life insurance in this state under the plan pursued by it as aforesaid, and that such license or permit should be annulled, or at least supended, until such time as the Company shall have complied with the provisions of our statute as herein indicated.

In concluding this opinion we feel constrained to add that by anything we have here said we do not wish to be understood as holding that an insurance company may not formulate a plan of insurance which contains special features that are, or are deemed to be, of special interest or benefit to the insured, and that it may not urge and exploit such features as "an inducement to insurance." But what we hold is that no insurance company may either directly or indirectly sell or dispose of its capital stock in connection with and as "an inducement to insurance," as is necessarily the case if the Company's plan is permitted. It is the plan pursued by the Company as disclosed by this record which is by us condemned as being contrary to the provisions of our statute, and not some other plan.

The order of the Commissioner granting the Company a license or permit to transact the business of life insurance in this state is therefore set aside and annulled, at the cost of the Company.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.

On Application for Rehearing.

FRICK, J. Counsel for the Mountain States Life Insurance Company, the principal defendant, has filed an application for a rehearing, and, in case a rehearing is denied, then for a modification of the judgment as the same appears in the original opinion.

There is no merit to the application for a rehearing, and nothing could be gained by a further discussion. There, however, is merit in counsel's request that the judgment of this court be modified. As the judgment now stands the license

or permit of the Company to transact business in this state is unconditionally annulled and set aside without giving it any opportunity to comply with the provisions of our statute and the further orders of the Commissioner. The judgment is therefore too sweeping. The judgment should be, and the same is hereby, modified, as follows: That the order of the Commissioner granting the Company a license or permit to transact the business of life insurance in this state is set aside and annulled; provided, however, that the company is hereby granted leave to apply to the Commissioner under its original application for a license or permit to transact the business aforesaid in this state in case it shall comply with the provisions of our statute and with the conditions imposed in this opinion and with the lawful orders of the Commissioner. In all other respects the opinion and the judgment of this court are adhered to. The Company is, however, required to pay the costs as stated in the original opinion.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.