Marshall, C. J.
 

 An examination of each and all of the twenty-three paragraphs sought to be stricken from the answers and cross-petitions shows that they are all of the same nature, and, if any of them are relevant, all are relevant. Summarizing a portion of the allegations sought to be stricken out, they amount to a claim that the contract between Mr. Brookhart and the companies, and the modification thereof, and the payments' to Mr. Brookhart under the contract, are illegal, as they constitute a violation not only of the general corporation laws of the state, but particularly violate certain portions of the insurance laws of the state, viz., Sections 9517, 9518, and 9519 of the General Code. The general corporation laws of the state require the corporation to be governed by its board of directors,
 
 *615
 
 to -whom all officers are directly accountable, and any contract between the board of directors and one of its members, or even a person not a member of the board, whereby the powers vested in the board of directors, or some particular officer elected by the board, are transferred to the person with whom the contract is made, is an unlawful attempt to delegate such powers, and the contract is to that extent illegal. Under the general provisions of the Insurance Code, in Section 9517, it is provided:
 

 “The board of directors, or a majority of them, may appoint a secretary and other officers or agents necessary for transacting its business, and pay such salaries and take such securities as they judge reasonable.”
 

 It is claimed by relators that this statute, when properly construed, confers upon the board of directors unlimited authority to fix salaries, and that the directors are to be the sole judges of the reasonableness thereof. It is claimed, on the other hand, by the respondent, that salaries are only lawful when they are, in fact, a reasonable compensation for the services rendered. A rule is sometimes tested by supposing an extreme case. Let it be supposed, therefore, that the receipts of the company were sufficiently large to permit the payment of $1,000,000 a year to some particular officer of the company, without violation of Section 9607-13 of the General Code. No one would contend that such a salary would be permitted to be paid though every director should concur therein, and even though the party contracted with was
 
 *616
 
 not a member of the board of directors. Surely it requires no citation of authority or logic to show that the Legislature intended, not only that the salaries should be adjudged to be reasonable by the board of directors, but that they should also, in fact, be reasonable.
 

 Summarizing' other allegations sought to be stricken out, they amount to the claim that Mr. Brookhart is performing all the functions of the board of directors and of all of the officers, and that he is placed in the inconsistent position of soliciting the business and approving the same after the same has been obtained, and also of paying losses and liabilities, and that there is no check upon any of such powers so attempted to be conferred. The secretary of an insurance company is usually the chief executive officer, and, so far as this record shows, this is true in the instant case. Ordinarily, any corporation, and especially an insurance corporation, is so constituted that the different officers, agents, and directors constitute mutual checks and balances upon the conduct of each other, but it is apparent from the allegations of this answer, if true, that no checks and balances are provided, but, on the contrary, the contract gives to Mr. Brookhart unlimited authority to solicit business, and to accept the same, and to pay all liabilities and demands at his discretion. As the contract formerly stood, before being modified, Mr. Brookhart received a commission upon all business obtained, and it was therefore to his financial benefit to accept contracts without regard to the hazards.
 
 *617
 
 Having no responsibility for the losses, it must necessarily facilitate obtaining business to make liberal adjustments and payments of. losses. We are equally clear on this branch of the case that the contract did not involve sound
 
 business
 
 practice, and it therefoi’e does not involve sound
 
 insurance
 
 practice. When the practice is applied to a mutual insurance company, it is open to severe criticism, because the policy holders in a mutual company are entitled to have returned to them all surplus payments of premiums over and above the amount expended for the payment of losses and the reasonable and necessary expenses of operation. On this point it is contended by relators that Section 9607-13 controls, and that there is no illegal expenditure so long as the expenses do not, in any one calendar year, exceed 40 per cent, of the premium income during that year. Relators have misconceived the true interpretation of that section. It is true that the Legislature has placed a limit upon expenditures, but it does not follow that relators may resort to extravagance without limit so long as the volume of the business and the total of the premiums collected are sufficiently large to permit such extravagance to be indulged without exceeding the 40 per cent, maximum limitation. The true interpretation of that section must be that the insurance company will not be ousted from its charter by reason of misfortunes which cause increased expenses so long as the expenses are kept within the 40 per cent, limit. The Legislature never intended to say that any expenditure, no matter how extravagant,
 
 *618
 
 would be approved, provided the 40 per cent, limit should not be exceeded.
 

 Referring to other allegations sought to be stricken out we find the allegation that the salary, as at present constituted, in the sum of $12,500 annually to Mr. Brookhart from each of the two companies, is exorbitant and excessive. It is claimed on this point by the relators that the burden is on the superintendent of insurance to make a showing that such salaries are excessive, and that no such showing has been made. It would seem, however, to be more reasonable that the mere claim of the superintendent that such salaries are. excessive should stand as against a motion to strike out on the ground of immateriality, thus permitting the case to be submitted upon evidence to determine whether they are, in fact, unusual, excessive, and exorbitant salaries.
 

 The petitions allege that neither of these companies has had any deficiencies in its lawful reserves, and the answer admits that these allegations are true. It is, however, urged in argument by the superintendent of insurance that mutual insurance companies do not discharge their entire obligations by maintaining the minimum required by statute. They still owe a duty to conduct, the business economically. If we assume that the companies have established and maintain sufficient reserves under the large expenditures pursuant to the contract, it follows that more reasonable expenditures would result in larger reserves, or that a distribution of surplus could be paid to the policy holders. It is urged in argument by the
 
 *619
 
 respondent that the premium receipts are being so far consumed under this contract that no provision is being made against the proverbial rainy day, and that if there should be any catastrophe, whereby these companies would meet with large losses, the policy holders would be unable to recover on account of such losses; or, at least, that such a situation is rendered probable by the company’s manner of conducting business, and that therefore the further transaction of business along such lines “will be hazardous to its policy holders or to its creditors or to the public.” The answer sets forth the volume of the business transacted, the total premium receipts, and the total salaries and commissions collected by Mr. Brookhart, and it is not necessary to analyze these figures carefully in order to reach the conclusion that all such figures are material to the inquiry.
 

 Relators contend that all these allegations are immaterial because they do not show a clear violation of the specific provisions of any statute in Ohio relating to the manner of conducting mutual insurance companies, and it is further claimed that said statutes do not specifically clothe the superintendent of insurance with authority to enter into this inquiry, and that by so doing the superintendent usurps the rights of the policy holders, who are the members of these mutual insurance companies. It becomes pertinent therefore to inquire into the powers and duties conferred upon the superintendent of insurance and to ascertain whether those powers and duties have been exceeded. It is true that the superintendent is an
 
 *620
 
 administrative officer and that his duties and powers are defined by statute. Without quoting the statutes in full it may be pointed out that they are to be found in Sections 617 to 644-2, both inclusive, General Code. These statutes are remedial in character and enter a field of human endeavor and enterprise not theretofore regulated by governmental agencies. It must therefore be assumed that the Legislature believed that there were abuses to be corrected and that the public interests needed safeguarding. The Legislature, in creating the office of superintendent of insurance, and in providing numerous statutes regulating the insurance business, recognized a public need and purposed to remedy a public evil. The nature and extent of the evil and the urgency of the need are not the subjects of the present inquiry. It is sufficient merely to state that they were evident and that the Legislature has recognized them and has provided a remedy. Being remedial, the statutes must be liberally construed with a view to carry out the legislative purpose and intent. The powers of the superintendent are necessarily limited and those limits are not to be transcended, yet in determining those limits the court should look to the object and purpose of the legislation and the mischief to be prevented, and so enlarge by implication the letter of the law as effectually to accomplish the ends to be attained. The principles declared in
 
 M’Culloch
 
 v.
 
 Maryland,
 
 17 U. S., (4 Wheat.),
 
 316,
 
 4 L. Ed., 579, have application to the instant case. The state of Maryland sought to destroy the national bank by taxing it to death.
 
 *621
 
 The power of the federal Congress to create a banking corporation was assailed. No snch power had been expressly conferred by the Constitution, and the federal government was conceded to be one of enumerated powers. Upon this point, the opinion states:
 

 “But we think the sound construction of the Constitution must allow to the national Legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people.”
 

 All these statutes under consideration here are enacted under the police power, and upon the theory that the business of insurance is impressed with a public use and that a governmental agency may properly be created to protect the interests of policy holders. The statutes authorize the superintendent to make examination of insurance companies and to employ inspectors for that purpose, and it would manifestly be a wasteful expenditure of money to employ inspectors to ascertain facts and conditions if the powers and duties of tb.« superintendent were only advisory. Insurance companies may not operate in the state of Ohio without a license, and it necessarily follows that the superintendent of insurance is invested with a measure of discretion in granting or withholding such license.
 

 This proposition is not one of first impression. It has been so declared in
 
 State ex rel. European Accident Ins. Co.
 
 v.
 
 Tomlinson, Supt. of Ins.,
 
 101
 
 *622
 
 Ohio St., 459, in the discussion at pages 467 and 468 of the opinion, 129 N. E., 684. In that case it was held that the duty enjoined upon the superintendent by Section 617, General Code, to see that the laws relating to insurance are duly executed and enforced, impliedly confers upon the superintendent the authority to withhold or revoke a license, in order to make that section more effective. Numerous decisions have been cited by respondent wherein the courts have regulated the salaries paid by corporations. All the cases cited are those where private corporations were involved and where some persons interested in the corporation made the complaint. It is therefore contended by relators that these cases are not authorities, because in the instant case the policy holders have not become parties, and it is therefore argued that it must be assumed that they are not complaining. This does not follow. Policy holders constitute a numerous class, and no single policy holder is sufficiently interested to incur the expense of investigation and correction. If the superintendent of insurance has any important function to discharge and if his existence is to be justified at all, it must be upon the. theory that he has been impliedly, if not expressly, clothed with an interest. It may be inquired whether the superintendent is merely an unarmed watchman who can only sound an alarm or is an administrator clothed with authority to determine the limitation of power of unsound insurance practices, and endowed with a full measure of discretion in executing necessary orders to correct abuses. Lawful
 
 *623
 
 reserves and corporate solvency are the objects of solicitude most stressed in the arguments of counsel for relators. To such an argument it may be answered that nothing tends more strongly to soundness and solvency than economy of operation, and nothing tends more certainly toward bankruptcy, disaster, and dissolution than extravagance.
 

 It has further been urged in argument by the relators that the contract in question may be regarded as a by-law. We think it must be so regarded, because it changes the duties and authorities of the officers and agents of the corporation. Treating the contract as an amendment to the bylaws, it must be governed by the provisions of Section 9607-8, General Code, relating to the regulation of mutual fire insurance companies, wherein it is stated:
 

 “That the by-laws of such company may be amended at any meeting of the board of directors, but such amendment shall not become effective unless and until the same is approved by the superintendent of insurance.”
 

 The superintendent not only has not approved this contract, but he makes this contract the basis of his refusal to renew the license.
 

 Notwithstanding all that has been said relative to the implied powers and authority of the superintendent, we are of the opinion that there is sufficient express authority to permit the superintendent to inquire into the matter of salaries and all unsound practices,’ even though at the time of such inquiry the company has not become actually insolvent. Section 9517, General Code, makes pro
 
 *624
 
 vision, which, in onr opinion, not only requires salaries to be reasonable, but it further makes provision that:
 

 “New by-laws or regulations shall not take effect until approved by the superintendent of insurance and a copy is filed in his office.”
 

 Section 634-2, G-eneral Code, provides the grounds upon which the superintendent may take charge of insurance companies in certain cases. Among these grounds we find:
 

 “Whenever any such corporation * * * (e) is found, by the superintendent of insurance to be in such condition that its further transaction of business will be hazardous to its policy holders, or to its creditors, or to the public.”
 

 Any extravagance in operation, the natural tendency of which is toward unsoundness, and the inevitable tendency of which will be to make the business hazardous, comes within the purview of that provision.
 

 It is not necessary to inquire whether the Brook-hart contract was
 
 ultra vires,
 
 or whether it was void at law; we need only inquire whether it was an unsound practice. It is not necessary to determine the ultimate lengths to which a superintendent may go in inquiring into the internal affairs and practices of an insurance company. It is not necessary to determine the limits of his authority in controlling the directors and officers in the matter of making contracts; it is sufficient in that connection to observe that this particular contract so changed the character of the companies’ regulations as to amount to an amendment to their by
 
 *625
 
 laws. It is not necessary to reach the conclusion that there has been a clear violation of some specific statute imposing a duty; the superintendent must be held to have some implied powers necessary to carry out the purposes stated in the express provisions of the statutes. It is not necessary that the company should have become actually insolvent; it is sufficient that the practices tend directly and inevitably to a situation calculated to render the business hazardous to its policy holders. It is not necessary that the superintendent should wait until reserves are actually impaired or insolvency has become an established fact; it is the duty of the superintendent to resort to preventive measures when improper practices are being employed.
 

 For all the foregoing reasons, it must be held that the allegations of the answer are material. The motions must therefore be overruled.
 

 Motions overruled.
 

 Day, Allen and Kinkade, JJ., concur.
 

 Robinson, J., not participating.