BANKERS LIFE AND CASUALTY COMPANY, an Illinois insurance corporation, appellee, v. STERLING ALEXANDER, Insurance Commissioner of Iowa, appellant.

Nos. 47738
47800.

(Reported in 45 N.W.2d 258)

December 12, 1950.

Rehearing Denied February 13, 1951.

Robert L. Larson, Attorney General, Kent Emery, Assistant Attorney General, and Samuel E. Orebaugh, Special Assistant Attorney General, for appellant.

Bump & Bump, of Des Moines, for appellee.

Sterling Alexander, of Des Moines, pro se.

GARFIELD, C.J.—We think the principal question presented by this appeal is whether defendant, Iowa insurance commissioner, has the power to require a foreign insurance company to discontinue distribution in Iowa of advertising material found by him to be deceptive and misleading, in violation of law, and to order that lack of compliance with this requirement would result in revocation of the company's license to do business in Iowa. The trial court held the commissioner had no such power. We cannot affirm this decision.

Plaintiff is a corporation organized under Illinois laws engaged in life and casualty insurance business with its principal office in Chicago, licensed to do business in Iowa August 3, 1948. On October 28, 1949, following notice to plaintiff and a hearing before defendant-commissioner, he found certain advertising material distributed by plaintiff in Iowa was misleading and deceptive, in violation of law, in several respects, and ordered plaintiff to discontinue such distribution and cease use in Iowa of the slogan "White Cross Plan" after December 31, 1949, under penalty of revocation of its license to do business in Iowa.

On December 23, 1949, plaintiff filed its petition in equity asking the court to determine that its advertising was not false or misleading and to enjoin enforcement of the commissioner's order. The petition alleges the commissioner acted beyond his powers and authority and in an arbitrary and discriminatory way in issuing the order. Copy of the order is attached to the petition.

On December 30, 1949, pursuant to a court order we understand was ex parte, temporary writ issued enjoining defendant from enforcing the order of October 28.

Defendant's answer admits formal allegations of the petition and making the order of October 28 but denies most of the

rest of plaintiff's petition and alleges in detail wherein plaintiff's advertising was misleading and deceptive.

Plaintiff's reply states no evidence was taken at the hearing before the commissioner but the commissioner and his deputies and plaintiff's representatives talked informally.

On February 27, 1950, plaintiff amended its petition by stating that since commencement of this action it has endeavored to satisfy defendant's objection to its advertising by eliminating certain features and its advertising is not deceptive. The court was asked to so find and declare. Defendant moved to strike the amendment to the petition upon several grounds unnecessary to explain now.

After issues were joined, plaintiff, pursuant to rule 105, R. C. P., asked the court to determine the law issues involved and to hold defendant is without authority in law to deprive plaintiff of the use of the slogan "White Cross Plan," his order of October 28 is void, plaintiff had eliminated from its advertising the parts to which defendant objected, there was nothing further to try and the injunction should be made permanent.

Defendant also asked the court to determine as matters of law that defendant was exercising a judicial function in determining plaintiff's advertising was misleading, plaintiff is not entitled to injunctive relief, the court cannot control the exercise of defendant's discretion and the matter of plaintiff's present advertising practices is not properly before the court but is within the discretion of the commissioner.

In response to these requests for adjudication of law points the court found and held the commissioner is without power or authority to revoke the license of an insurance company to do business in Iowa for use of advertising material in securing applications even though it might be misleading or deceptive; the commissioner had no power or authority to order plaintiff to discontinue its advertising or to make the order of October 28, 1948, which is void; taking proof in the case would be of no avail to either party; determination of the law points is decisive of the case and plaintiff is entitled to a decree making the temporary injunction permanent. From decree accordingly entered March 15, 1950, defendant has appealed.

On March 22, 1950, plaintiff filed in the same case a supplemental petition stating defendant was attempting to circumvent the decree of March 15 by refusing to renew the licenses of plaintiff and its agents to do business in Iowa on April 1, 1950, because of the use of plaintiff's advertising material; defendant had notified plaintiff and its agents of hearings to be held by him (on March 27 and 29) at which they could show why renewal of their licenses should not be denied because of the use of such advertising; it would be useless to attend the hearings because defendant's mind is made up as to what he will do; the commissioner is acting in an arbitrary and despotic manner. The court was asked to hold it was the purpose and intent of the decree of March 15 that defendant had no power or authority either to revoke plaintiff's license or refuse to renew it because of its advertising.

Upon filing the supplemental petition defendant was ordered ex parte to issue licenses to plaintiff and its agents for the year commencing April 1, 1950, and a mandatory writ which so provided was served on defendant.

Defendant moved to dismiss the supplemental petition and to dissolve the order of March 22 on numerous grounds which need not now be enumerated.

It was stipulated that the advertising material referred to in the pleadings has been issued by plaintiff and used by its agents and the commissioner has declined to renew the licenses of plaintiff and its agents solely because of the use thereof. Also that the hearings before the commissioner referred to in the supplemental petition are waived with the same effect as if they were held and findings made against plaintiff and its agents on the sole ground above-stated.

On August 10, 1950, without hearing evidence, upon examination of the pleadings and the above stipulation and after arguments of counsel, the court overruled defendant's motion to dissolve the temporary mandatory writ issued on March 22; held its decree of March 15 means defendant is without power or authority either to revoke or refuse to renew plaintiff's license because of the use of its advertising; while section 522.3, Code, 1950, provides the commissioner may "for good cause" decline

to issue or revoke an agent's license, the use of certain advertising by the company is not "good cause."

We granted defendant an appeal under rule 332 from the order of August 10, 1950. We need not consider whether such order was a final decision which might be appealed as a matter of right under rule 331.

It is apparent from the above the case has not been tried on its merits, no evidence has been taken, and the decree of March 15 and the order of August 10 are based on the trial court's determination the commissioner was without power or authority in law to revoke or refuse to renew the licenses of plaintiff or its agents to do business in Iowa because of the distribution of advertising material found by him to be misleading and deceptive.

█ It is the ultimate function of the courts to determine whether the commissioner has acted within the powers conferred upon him by law. Mutual Benefit Life Ins. Co. v. Welch, 71 Okla. 59, 175 P. 45, 50; North British & Mercantile Ins. Co. v. Craig, 106 Tenn. 621, 62 S.W. 155, 160; Utah Assn. of Life Underwriters v. Mountain States Life Ins. Co., 58 Utah 579, 200 P. 673. We consider now whether defendant so acted here.

Section 505.8, Codes, 1946, 1950, I. C. A., provides: "The commissioner * * * shall have general control, supervision, and direction over all insurance business transacted in the state, and shall enforce all the laws of the state relating to such insurance."

Code section 507.10 states: "If upon investigation or examination it shall appear that any company * * * is doing an illegal or unauthorized business * * * the commissioner of insurance may suspend its authority to transact business within this state until it shall have complied in all respects with the laws applicable to such company * * * or he may revoke its certificate of authority to transact business within this state * * *."

Section 515.65 reads: "The commissioner of insurance shall withhold his certificate or permission of authority to do business from any company neglecting or failing to comply with the provisions of this chapter."

One of "the provisions of this chapter", section 515.144, is that no insurance company doing business in this state or its

agents shall issue any false or misleading representations by signs or cards tending to conceal or misrepresent the true identity of the insurer and "the type or lettering used in any advertisement or representation shall set forth the name of the company or organization assuming the risk more conspicuously than that of any department or general agency." Section 515.145 makes any violation of 515.144 punishable by a fine not exceeding $500.

Section 515.119 provides: "Every insurance company * * * doing business in this state shall conform to all the provisions ·of this chapter and to other laws of this state * * *."

Section 515.42 states: "Such certificate of authority shall expire on the first day of April * * * and shall be renewed annually so long as such company shall transact business in accordance with the requirements of law * * *."

Section 515.77 provides for issuance to a foreign company of a certificate to do business and that it shall be renewed annually on April 1st "if the commissioner is satisfied * * * the company has complied with the provisions of law applicable thereto."

Section 515.78 prohibits an agent for any company from transacting insurance business in Iowa without procuring from the commissioner "a certificate of authority to the effect that such company has complied with all the requirements of this chapter."

With reference to refusal to issue and revocation of an agent's license, section 522.3 states, "The commissioner may, for good cause, decline to issue such license or may, for like cause, revoke the same."

Section 515.144, above referred to, is not the only statutory prohibition against the issuance by an insurance company of ·false or misleading advertising. Section 511.20 prohibits any life company doing business in Iowa from issuing or using any "circular, or statement of any sort misrepresenting the terms of any policy issued by it or the benefits or advantages promised thereby * * *." Violation of 511.20 is by 511.21 made a misdemeanor. Code section 713.24 is a broad provision making it a misdemeanor to circulate an untrue, deceptive or misleading advertisement with intent to dispose of merchandise or "anything"

or to induce the public to enter into any obligation relating thereto.

The criminal penalties imposed by sections 515.145, 511.21 and 713.24 are cumulative, not exclusive, and do not deprive the commissioner of the power to revoke or refuse to renew a license to do business in Iowa for the company's failure to comply with law. State ex rel. European Acc. Ins. Co. v. Tomlinson, 101 Ohio St. 459, 129 N.E. 684, 686; 44 C. J. S., Insurance, section 79c, page 567.

We will not prolong this opinion to mention other statutes which bear upon the commissioner's authority to issue, refuse to issue and revoke licenses to insurance companies and their agents to transact business in Iowa. It is apparent from the sections referred to the legislature intended to and did clothe the commissioner with broad powers in these matters and the courts almost invariably so hold in cases of this kind. See State ex rel. Allstate Ins. Co. v. Bowen, 130 Ohio St. 347, 199 N.E. 355, 359; Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 77 P.2d 26, 28; American Life & Acc. Ins. Co. v. Ferguson, 66 Or. 417, 134 P. 1029, 1031.

Statutes which regulate the insurance business are remedial in character, enacted under the state's police power upon the theory the business is impressed with a public interest and the public is entitled to protection against illegal practices. Such statutes are liberally construed in order to carry out the legislative purpose. See State v. Alley, 96 Miss. 720, 51 So. 467, 477; State ex rel. National Mut. Ins. Co. v. Conn, 115 Ohio St. 607, 155 N.E. 138, 142, 50 A. L. R. 473, 479; Utah Assn. of Life Underwriters v. Mountain States Life Ins. Co., supra, 58 Utah 579, 200 P. 673, 677; annotation 10 A. L. R. 2d 950; 29 Am. Jur., Insurance, section 22; 50 Am. Jur., Statutes, sections 392, 393. See also Noble v. English, 183 Iowa 893, 167 N.W. 629; Iowa Code section 4.2.

"The business of insurance is one peculiarly subject to supervision and control." Hartford Acc. & Indem. Co. v. Nelson Mfg. Co., 291 U. S. 352, 360, 54 S. Ct. 392, 78 L. Ed. 840, 846, and citations.

Statutes intended for public benefit are to be taken most favorably to the public. Hawkeye Portland Cement Co. v. Chi-

cago, R. I. & P. R. Co., 198 Iowa 1250, 1255, 201 N.W. 16, 19; Curtis v. Michaelson, 206 Iowa 111, 118, 219 N.W. 49; Wood Bros. Thresher Co. v. Eicher, 231 Iowa 550, 562, 1 N.W.2d 655, 661.

We will briefly discuss some decisions which illustrate the attitude of courts generally in cases of this kind.

North British & Mercantile Ins. Co. v. Craig, supra, 106 Tenn. 621, 644, 62 S.W. 155, 160, cited by both sides, was a suit to enjoin the state insurance commissioner from revoking plaintiff's license to do business in the state. As in many similar cases the petition was held demurrable on the ground the commissioner had authority to revoke the license for reasons stated by him. The statute authorized the commissioner to revoke a license if a company "has failed to ·comply with the law" or "shall violate or neglect to comply with any provision of law obligatory upon it." The court held a license could be revoked not only for a violation of the act which contained these provisions, but also for violation of other statutes *and the common law.*

State ex rel. European Acc. Ins. Co. v. Tomlinson, supra, 101 Ohio St. 459, 468, 129 N.E. 684, 686, was a mandamus action to compel the state superintendent of insurance to issue a renewal license. The superintendent had revoked a previous license because of relator's failure to deposit with him bonds required by law. No statute expressly authorized such revocation on the ground asserted. It was held the general statute, similar to our section 505.8 quoted first above, that the superintendent "shall see that the laws relating to insurance are duly executed and enforced" impliedly "gave him full authority to revoke the license * * * in order to secure compliance with the insurance laws." A demurrer to the petition was held rightly sustained.

This Tomlinson case has been followed in later decisions. State ex rel. National Mut. Ins. Co. v. Conn, supra, 115 Ohio St. 607, 155 N.E. 138, 142, 50 A. L. R. 473, 479, 480; State ex rel. Allstate Ins. Co. v. Bowen, supra, 130 Ohio St. 347, 199 N.E. 355, 359, where the superintendent's refusal to issue renewal licenses was based in part upon his finding relator's advertising was misleading. The court said (page 363 of 130 Ohio St., page 362 of

199 N.E.), "No company * * * should be permitted to secure business through the medium of false advertising."

American Life & Acc. Ins. Co. v. Ferguson, supra, 66 Or. 417, 134 P. 1029, is more like the case at bar in the procedure adopted than any that has come to our attention. Plaintiff brought suit to enjoin the insurance commissioner from canceling its license. The trial court granted the relief and defendant appealed. Pending the appeal the license expired and defendant refused to renew it on the ground asserted by him for cancelation—that plaintiff did not have the required amount of paid-up capital. Plaintiff filed a supplemental complaint in the same case and procured ex parte an order requiring defendant to renew the license. Defendant also appealed from this order. There was a reversal upon both appeals. So far as shown by the opinion there was no statute giving the commissioner express authority to revoke or refuse to renew a license upon the ground asserted by him. His authority in these respects was upheld by virtue of statutes which made it his duty to see that the laws were faithfully executed and to issue a license if satisfied the applicant was qualified to do business under the statutes.

It is not necessary to decide here whether defendant has implied power under our statutes to revoke or refuse to renew the licenses of plaintiff and its agents on the ground asserted by him. Section 507.10, above set out, expressly confers upon him power to suspend or revoke authority to transact business in Iowa of any company if upon investigation or examination, obviously by the commissioner, it appears to be doing an illegal or unauthorized business. Soliciting insurance by false, deceptive or misleading advertising, as found by defendant, is an illegal business.

If the commissioner has power to revoke plaintiff's license upon the ground asserted by him, he may refuse to issue a license upon such ground. His power to refuse a license is coextensive with his power of revocation. It would of course be useless to compel issuance of a license which might at once be revoked. See State ex rel. National Life Assn. of Hartford v. Matthews, 58 Ohio St. 1, 49 N.E. 1034, 1035, 40 L. R. A. 418; Bankers Union Life Ins. Co. v. Read, supra, 182 Okla. 103, 77 P.2d 26, 29.

Further, section 515.65, above-quoted, in mandatory terms expressly requires the commissioner to withhold a license from any company failing to comply with the provisions of chapter 515, one of which is the prohibition in section 515.144 against false or misleading advertising.

Sections 515.42 and 515.77, above set out, clearly contemplate the renewal of a license only to a company which has complied with the applicable provisions of law. Section 515.78 is much to the same effect as to "all the requirements of this chapter [515]." Under 515.77 the license shall be renewed only if "the commissioner is satisfied * * * the company has complied with the provisions of law applicable thereto."

With reference to agents' licenses section 522.3 plainly authorizes the commissioner to decline to issue or to revoke such licenses "for good cause." As stated, it was stipulated the advertising material referred to in the pleadings (this of course includes defendant's pleadings) was used by plaintiff's agents.

An insurance company acts largely if not wholly through its agents. See Noble v. English, supra, 183 Iowa 893, 898, 899, 167 N.W. 629. If, as we have held, defendant has authority to revoke or refuse to renew plaintiff's license, it logically follows that such revocation or refusal may constitute good cause for refusal to renew the agents' licenses. This is the effect of section 515.78, above set out, which prohibits an agent from transacting insurance business in Iowa for any company without the commissioner's "certificate of authority to the effect that such company has complied with all the requirements of this chapter." It would be an anomalous situation if agents could compel the commissioner to authorize them to act for a principal which in turn was without authority to transact business in Iowa. "The agent's rights cannot rise higher than the rights of his principal." Noble v. English, supra.

Aside from what we have said about the commissioner's authority, if plaintiff brought this action when, as defendant claims, it was soliciting insurance in Iowa by misleading or deceptive advertising, in violation of law, there is a settled principle upon which it may properly be denied relief in this action, in reality one of mandamus (tried as an equitable action—Code section 661.3) to compel the issuance of licenses to it and its

agents. Such relief may be withheld from a party violating the law because he does not come into court with clean hands, and equity will not ordinarily aid a wrongdoer. Funck v. Farmers Elevator Co., 142 Iowa 621, 632, 121 N.W. 53, 24 L. R. A., N. S., 108; Citizens Life-Ins. Co. v. Commissioner of Insurance, 128 Mich. 85, 87 N.W. 126, 128; Hartford Fire Ins. Co. v. Raymond, commissioner, 70 Mich. 485, 38 N.W. 474, 485; State ex rel. Fidelity & Cas. Co. v. Fricke, 102 Wis. 107, 77 N.W. 732, 733; annotation 4 A. L. R. 44, 92; 19 Am. Jur., Equity, section 470, page 325: "Where a mandamus proceeding is triable as a suit in equity * * * plaintiff must have clean hands in order to obtain the writ."; 44 C. J. S., Insurance, section 79c, page 568: "If the company is doing business, however, in a manner prohibited by statute, a revocation of its license on that account will not be relieved against, although the revocation is made without statutory authority."

"Where a suit in equity concerns the public interest * * * the doctrine that he who comes into equity must come with clean hands assumes a greater significance * * *." 19 Am. Jur., 1950 Cum. Supp. (page 25) to section 469, page 324.

In Citizens Life-Ins. Co. v. Commissioner of Insurance, supra, it was contended, as plaintiff does here, the law did not permit the commissioner to withhold his certificate, but resort must be had to another remedy. In answering the contention the Michigan court said in part (page 91 of 128 Mich., page 128 of 87 N.W.): "* * * inasmuch as * * * relator is not complying with the law, we cannot be expected to aid it in its intended violation by the discretionary writ of *mandamus*."

Hartford Fire Ins. Co. v. Raymond, supra, states (page 507 of 70 Mich., page 485 of 38 N.W.): *"Mandamus* is not a writ of right, and this court does not feel inclined to aid a wrongdoer in setting at defiance the laws of the state."

State ex rel. European Acc. Ins. Co. v. Tomlinson, supra, says (page 468 of 101 Ohio St., page 686 of 129 N.E.): " * * * when it seeks that remedy [mandamus] * * * while still violating the provisions of the state law relating to insurance, the relator cannot establish a clear right for this writ."

Of course we express no opinion as to whether plaintiff has in fact violated our laws with regard to advertising. The deci-

sion upon this question was for the commissioner in the first instance. Noble v. English, supra, 183 Iowa 893, 898, 167 N.W.. 629; North British & Mercantile Ins. Co. v. Craig, supra, 106 Tenn. 621, 62 S.W. 155, 161; State ex rel. Allstate Ins. Co. v. Bowen, supra, 130 Ohio St. 347, 199 N.E. 355, 364.

 As stated, defendant found there were such violations of law in several respects. Plaintiff seeks to nullify the commissioner's order on two principal grounds: (1) lack of statutory power or authority, and (2) arbitrary action. The trial court, we think erroneously, sustained the first of these grounds. Whether plaintiff is entitled to relief upon the ground defendant acted arbitrarily cannot be determined until trial upon the merits.

If it appears the commissioner has acted arbitrarily in his attempt to revoke and refusal to renew licenses of plaintiff and its agents plaintiff will be entitled to relief. Mandamus will not lie to control the discretion of an official unless it is shown he has acted arbitrarily or capriciously. See Code section 661.2; Miller v. Hanna, 221 Iowa 56, 62, 63, 265 N.W. 127, and citations; Bernstein v. City of Marshalltown, 215 Iowa 1168, 1174, 1175, 248 N.W. 26, 86 A. L. R. 782; Noble v. English, supra, 183 Iowa 893, 898, 167 N.W. 629; Bankers Union Life Ins. Co. v. Read, supra, 182 Okla. 103, 77 P.2d 26, 28, 29; State ex rel. Sims v. McMaster, 95 S. C. 476, 79 S.E. 405; 33 Am. Jur., Licenses, section 67; 44 C. J. S., Insurance, section 79c, page 567, "The license * * * may not be revoked arbitrarily * * *."

Before plaintiff can prevail on the ground defendant acted arbitrarily or capriciously in making his order of October 28 it must appear plaintiff was not then violating our laws as to advertising.

 As previously stated, an amendment to plaintiff's petition filed February 27, 1950 alleges that since the action was commenced (on December 23, 1949) plaintiff has endeavored to satisfy defendant's objection to its advertising by eliminating certain designated features. It also alleges plaintiff has submitted to defendant such modified advertising but he has declined to consider it although the objectionable features have been eliminated. The prayer of the amendment asks the court to find

and declare that plaintiff's modified advertising does not violate the law.

Two of the grounds of defendant's motion to strike this amendment are (1) that plaintiff's rights were fixed at the time of defendant's order (October 28) or in any event on December 31, 1949 (when the order states plaintiff must discontinue use of the advertising claimed to be illegal), and (2) plaintiff is not entitled in this action to have the court substitute its discretion for that previously exercised by the commissioner. We think the court erred in overruling defendant's motion to strike.

There is no allegation in plaintiff's amendment that defendant acted arbitrarily or capriciously in not considering or approving plaintiff's modified advertising. Under the authorities previously cited and many others the discretionary acts of such an official, within the powers conferred upon him, will not be reviewed in an action like this unless the acts are arbitrary or capricious. Nor does plaintiff allege it discontinued use of the advertising objected to by defendant before the expiration of the sixty-four-day period allowed therefor in defendant's order of October 28. (The hearing before the commissioner, which preceded the order was on September 12 and notice thereof given on August 20.)

We think it is for the commissioner, in the first instance, to determine whether the advertising used by plaintiff at the time it amended its petition is in conformity with law and also to decide what the effect may be upon plaintiff's right to a license of its delay in meeting his requirements, if it appears they were belatedly met. If it is shown defendant acts arbitrarily or capriciously in reaching his decision it is subject to review in such an action as this.

We know of only one decision in which a similar question has arisen. In State ex rel. Allstate Ins. Co. v. Bowen, supra, 130 Ohio St. 347, 368, 199 N.E. 355, 364, as previously indicated, the superintendent of insurance refused to issue renewal licenses, in part because of his finding each relator's advertising was misleading. Each company contended in its mandamus action it had complied with the superintendent's requirements and asked the court to so hold. The court refused to do so and denied mandamus, saying:

"Relators now claim that they have eliminated the advertising complained of and have substantially complied with the requirements of the department of insurance, and that this court should as a matter of first instance require the superintendent of insurance to renew their licenses. This we will not do.

"Let relators in their new dress present their case to the tribunal authorized by law to entertain it."

Of course, notwithstanding prior violations of law, if any, plaintiff would be entitled to apply to the commissioner for authority to transact business in Iowa if it complies with applicable requirements of law. Whether such authority should be granted or whether refusal thereof could successfully be reviewed as arbitrary or capricious are questions not now presented. Utah Assn. of Life Underwriters v. Mountain States Life Ins. Co., supra, 58 Utah 579, 200 P. 673, holds the commissioner there exceeded his authority in granting a license but that the company should have the right to apply for another license if it complies with statutory provisions.

Plaintiff argues the commissioner is without authority to prevent its use in Iowa of what it says is its registered trade-mark, "The White Cross Plan," or to revoke its license because of such use. While plaintiff alleges it has this trade-mark, registered in Iowa, defendant's answer denies the allegation and it has not been established by proof. As the trial court's decree recites, the existence of such trade-mark may not be determined from a controverted allegation without proof.

Further, a registered trade-mark may not be used in advertising material to deceive or mislead the public, in violation of law. See Federal Trade Comm. v. Winsted Hosiery Co., 258 U. S. 483, 494, 42 S. Ct. 384, 66 L. Ed. 729, 734; Brougham v. Blanton Mfg. Co., 249 U. S. 495, 499, 39 S. Ct. 363, 63 L. Ed. 725, 730; Irwin v. Federal Trade Comm., 8 Cir., 143 F.2d 316, 325; Federal Trade Comm. v. Real Products Corp., 2 Cir., 90 F.2d 617, 619; Federal Trade Comm. v. Kay, 7 Cir., 35 F.2d 160, 162 (certiorari denied 281 U. S. 764, 50 S. Ct. 463, 74 L. Ed. 1173).

Still further, plaintiff's use of the slogan "The White Cross Plan" is only one of several respects in which the commissioner found plaintiff's advertising was deceptive and misleading, in

violation of law. We are clearly of the opinion plaintiff is not entitled to an affirmance on the strength of its allegation "The White Cross Plan" is a registered trade-mark.

Plaintiff argues defendant may not complain of its advertising or revoke or refuse to renew its license on such ground unless it had previously been convicted upon a criminal charge based thereon. As before indicated, we disagree with this argument and are not disposed to thus restrict the commissioner's authority.

This opinion does not conflict with our decision in Homesteaders Life Assn. v. Murphy, 224 Iowa 173, 175, 177, 275 N.W. 146, 147, where a predecessor of defendant sought to compel a domestic fraternal beneficiary association, organized under what is now Code chapter 512, to pay the gross premium tax imposed by what is now Code section 432.1, which excepts such associations from liability for the tax. A provision (now section 512.12) of the chapter under which the association was organized is, "Such associations shall be governed by this chapter, and shall be exempt from the provisions of the statutes of this state relating to life insurance companies, except as hereinafter provided." Our Homesteader opinion quotes this provision and also recognizes that the statutes having to do with foreign companies "have no bearing upon the issues" then before us. We held plaintiff-association was not legally liable for the tax sought to be enforced and the commissioner was therefore without power to compel its payment or revoke plaintiff's authority to transact business in Iowa because of its nonpayment. In connection with the Homesteader case see annotation 146 A. L. R. 454, 498, et seq.

Upon consideration of all matters presented we hold the trial court was in error as indicated herein in its determination of points of law, its decree of March 15, 1950, based thereon, and its order of August 10, 1950, which purports to be pursuant to the decree, and that the case should be reversed and remanded for trial upon its merits.—Reversed and remanded.

All JUSTICES concur.